**AMERICAN COMMITTEE ON MATERNAL WELFARE, Inc et v CINCINNATI (city) et**

Ohio Common Pleas, Hamilton Co

Decided May 23, 1938

Bert H. Long, Cincinnati, Haveth E. Mau, Cincinnati, for Committee on Maternal Welfare and Special Pictures Corporation.

John D. Ellis, City Solicitor, Cincinnati, and Nathan Solinger, Assistant City Solicitor, Cincinnati, for the city of Cincinnati, Clarence O. Sherrill, Harry J. Wernke, and Eugene T. Weatherly.

Grauman Marks, Cincinnati, for defendant, The United Theatres Company.

By BELL, J.

This is a bill in equity for an injunction.

There are joint plaintiffs, The American Committee on Maternal Welfare, Inc., a corporation under the laws of the state of New York, and Special Pictures Corporation, a corporation under the laws of the state of Delaware. The last named corporation owns as its only asset, a motion picture entitled, "The Birth of a Baby;" as owner it entered into a contract with the defendant the United Theaters Company, an Ohio corporation, engaged in the business of operating motion picture houses in the state of Ohio, among others, one known as B. F. Keith Theatre in this city. By the terms of the contract, the defendant The United Theatres Company contracted to exhibit this picture, which had been approved and certified by the Board of Censors of Motion Picture Films of the state of Ohio, both contracting parties to share in the proceeds of the receipts from the public exhibition.

The contracting defendant, on May 13, 1938, at about ten o'clock in the morning, commenced the public exhibition of this picture, for an admission fee charged by and paid to it. The bill then sets forth that Messrs. Clarence O. Sherrill, Harry J. Wernke and Eugene T. Weatherly, the city manager, safety director, and chief of police of the city of Cincinnati, respectively, entered upon the premises of the defendant company and ordered the immediate discontinuance of the exhibition of said picture, and threatened to arrest the officia's, employees, agents and operators of the theatre, and to revoke the license of the company unless said orders were complied with; the petition further alleges that the acts of the city officials heretofore mentioned are violative of the Fourteenth Amendment to the Constitution of the United states, of **Article I, §11 of the Ohio Constitution** and certain statutes of this state. The prayer is that a temporary restraining order be issued, and upon final hearing it be made permanent.

The answer of the city admits the official positions of Messrs. Sherrill, Wernke and Weatherly; that the United Theaters Company is a corporation under the laws of this state; that said corporation operates B. F. Keith Theatre; that these officials did order the immediate discontinuance of the picture unless such exhibition was made under certain conditions prescribed by them; that the city manager did threaten to revoke the license of The United Theatres Company and did threaten to arrest the officials and employees of the B. F. Keith Theatre unless said picture was exhibited in accordance with the conditions. It is further set forth that the part of the picture which the city officials ordered deleted was a sequence of about forty seconds, and was in the judgment of the city manager a violation of §§184-6 and 593 of the Code of Ordinances of the city of Cincinnati. It was further ordered that persons under the age of eighteen (18) years should be denied admittance.

The officers heretofore referred to, in the answer set up that in their opinion that portion of the picture which they describe as objectionable is an obscene, lewd, lascivious and immodest picture. The prayer of the answer is that the petition be dismissed.

The United Theatres Company filed a separate answer in which it admits each and every allegation of the petition of the plaintiffs, and sets forth that under its contract with the plaintiff Special Pictures Corporation, it is restricted from making any cuts, deletions or omissions in the exhibition of the picture; further, that the city had issued to it under date of November 12, 1937, a license to operate the B. F. Keith Theater, and that if said license is revoked it will cause irreparable injury and damage to the defendant. The prayer is that its rights be adjudicated and such relief be granted as is warranted in law or equity.

The plaintiffs filed a reply to the answer of the city, in which it is denied that any ordinance of the city authorized or empowered the city manager to order a discontinuance of the exhibition or to revoke the license of The United Theatres Company, and if said ordinance purports to authorize and empower such action, it is violative of and in conflict with certain provisions of the statutes of Ohio, as well as the Federal and State Constitutions.

Prior to the hearing of this cause, at the request of all parties and counsel, the court witnessed a private exhibition of this picture. At that time it was considered that an acquaintance with the picture might be necessary to a decision of the cause. The picture in the opinion of the court, plays no part in the proper decision of the issues raised, and the court makes no comment other than to say that thinking persons who see this picture must arrive at the inevitable conclusion that honest and sincere minds could violently disagree as to the propriety of its public exhibition.

The cause was heard upon the pleadings and the evidence of the plaintiffs, which evidence was confined to the right of the plaintiffs to maintain the suit, and upon the introduction of such evidence the plaintiffs rested the cause. The defendants offered no evidence.

The uncontradicted evidence is, that The American Committee on Maternal Welfare, Inc., is a corporation not for profit, organized for the purpose of creating a motion picture educational in character, as to the proper care of a prospective mother during pregnancy and childbirth. After the picture was completed, its ownership was transferred to Special Pictures Corporation.

Under this state of facts, The American Committee on Maternal Welfare, Inc. has no right which has been injured or threatened, and is not a proper party plaintiff, and its prayer for relief is denied.

The suit will be considered and determined upon the issues joined between Special Pictures Corporation, plaintiff, and the defendants.

The question to be determined is one of power and not of judgment. In other words, if the officials of the city had the power to make the orders complained of, there is no question of abuse of discretion.

The plaintiff claims that the making of these orders violate its constitutional rights as guaranteed by **Article 1, §11 of the Constitution of Ohio** and the Fourteenth Amendment to the Federal Constitution. The pertinent portion of Article I, **§11 of the Constitution of Ohio**, reads as follows:

"Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press * * *."

The pertinent portion of the Fourteenth Amendment to the Federal Constitution reads as follows:

"No state shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law * * *."

In considering these claims it must be kept in mind that the exhibition of motion pictures is a business pure and simple, originated and conducted for profit like other spectacles, and not to be regarded nor intended to be regarded under either Constitution as part of the press of the country, or as an organ of public opinion. These pictures are mere representations of events of ideas and sentiments published and known, useful and entertaining, capable of evil, having power for it the greater, because of their attractiveness and manner of exhibition.

The United States Circuit Court of Appeals was confronted with the questions of constitutional law here presented, in the case of Mutual Film Company v The Industrial Commission of Ohio et al reported in 215 Fed. Rep., at page 138. The court answered the question of constitutionality in this language:

"The Ohio Act, May 3, 1913 (the Act here in question), which provides for a Board of Censors of moving picture films, to which all films must be submitted before being publicly exhibited in the state, and prohibiting the exhibition of any film not bearing the stamp of approval of such board is not in violation of the provisions of either the Federal or State Constitution safeguarding the freedom of the press, but is in effect a license regulation and within the police power of the state."

The decision of the Circuit Court of Appeals was affirmed by the Supreme Court of the United States, and that court disposed of the contention as to the constitutional questions in these words:

"The Moving Picture Censorship Act of Ohio of 1913 is not in violation of the Federal Constitution or the Constitution of the state of Ohio, either as depriving owners of moving pictures of their property without due process of law or as a burden on interstate commerce, or as abridging freedom and liberty of speech and opinion, or as delegating legislative authority to administrative officers."

On the questions of constitutional right asserted by the plaintiff, this case must be resolved against it.

The city solicitor contends that the city is doubly fortified in the passage of the Ordinances (184-6 and 593) set forth in the answer, by virtue of §3 of Article XVIII, of the Constitution, and §3657 GC.

Article XVIII, §3 of the Constitution reads as follows:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

Sec 3657 GC is found in the enumeration of powers granted by the legislature to municipal corporations within the state, and is headed, "Peace and Morals;" it reads in part as follows:

"To regulate, by license or otherwise, restrain or prohibit theatrical exhibitions, public shows and athletic games of whatever name or nature for which money or other reward is demanded or received; * * *"

This section, in my opinion, is of no importance in the decision of this case. The court will take judicial notice of the fact that the city of Cincinnati is a Home Rule city, operating its municipal government by virtue of a charter adopted in conformity with Article XVIII, of the Constitution of 1912. Therefore, §3657 GC, neither adds to nor detracts from the power of the city in the instant case.

The Constitution by §3, Article XVIII having given the city local police power within its limits, the city had a right to adopt and enforce any ordinance within the condition contained in the constitutional provision—that is, that the ordinance must not conflict with general law.

In the case of Billings v Railroad Company, 92 Oh St 483, Judge Johnson, speaking for the Supreme Court, uses this language:

" 'Counties, cities, and towns are municipal corporations created by the author-

ity of the legislature, and they derive all their powers from the source of their creation, except where the Constitution of the state otherwise provides.' The manifest purpose of the amendment in 1912 was to alter this situation, and to add to the governmental status of the municipalities. The people made a new distribution of governmental power. The charter of a city which has been adopted in conformity with the provisions of Article XVIII, and which does not disreagerd the limitations imposed in that article or other provisions of the Constitution, finds its validity and its vitality in the Constitution itself, and not in the enactments of the General Assembly. The source of authority and the measure of its extent is the constitution. The poweres conferred by such a charter adopted within the limits stated, are not affected by the general statutes of the state."

The Supreme Court has reiterated this principle many times since that decision, and in the cases of **Village of Struthers v Sokol and City of Youngstewn v Sandela, 108 Oh St 263,** Chief Justice Marshall says:

"Municipalities in Ohio are authorized to adopt local police, sanitary and other similar regulations by virtue of §3, Article XVIII of the Ohio Constitution, and derive no authority from, and are subject to no limitations of the General Assembly, except that such ordinances shall not be in conflict with general laws."

In **State ex Cozart v Carran, 133 Oh St 50,** 10 O.O. 15, Judge Gorman recognizes and adopts this same principle.

It is therefore manifest that §3657 GC, being a general law passed by the legislature prior to the adoption of the Constitution of 1912, neither adds to nor detracts from the right of the city to pass the ordinances.

Section 184-6 of the Ordinances of the city, insofar as pertinent to this case, reads as follows:

"* * * When the city manager gives his consent to the issuance of such license, and said license is issued in pursuance thereof, it shall be upon the express condition that the city manager or other officers of the city designated by him shall at all times have access to such theatre, concert hall, place of amusement, entertainment, or exhibition, and that if at any time, in the opinion of said city manager,

the performance, entertainment or exhibition given in such place is immoral, indecent, or injuriour to the public welfare or morals, then the city manager shall have the power to revoke said license without refunder."

Counsel for the plaintiff claims that this ordinance does not give the manager the power or authority to do the acts complained of. The point that counsel seeks to make is that in this ordinance the phrase **moving picture show** is not specifically set forth. In my opinion this claim is untenable. The language of the ordinance is sufficiently inclusive to grant power and authority to the city manager to control all exhibitions including motion pictures.

Ordinance 593 pleaded in the answer of the city is not pertinent to this inquiry, it being a penal ordinance, with which the city manager has nothing to do. It reads as follows:

"Whoever shall print, engrave, sell, offer for sale, give away, exhibit or publish, or exhibit as for sale or other purpose, or having in his or their possession for the purpose of selling, exhibition or giving away, any obscene, lewd, lascivious, indecent or immodest book, pamphlet, paper, picture, image, cast, statuary, drawing or representation, or any other article of an indecent or immoral nature, or book, paper, print, circular or writing made up principally of pictures, or stories of immodest deeds, lust or crime, or shall exhibit upon the public street or highway, any of the articles or papers, prints, publications as aforesaid, within the view of passersby upon said street, or highway, shall be fined not more than fifty dollars."

Any person violating its provisions would be subject to arrest and trial, and if found guilty, to the punishment imposed for its violation.

The city manager derives no power by virtue of that ordinance, to do any of the acts which are done or threatened here.

The important and all-inclusive question to be decided in this case is, does Ordinance 184-6 conflict with general law?

The original act creating the board of censors under the jurisdiction of the Industrial Commission of Ohio is found in §871-46 to 871-53 inclusive, 103 O. L., 399, effective in the year 1913.

By the passage of the Administrative Code (109 O. L. 105, approved April 26, 1921), §§871-46 and 871-47 were repealed

and film censorship was transferred from the Industrial Commission of Ohio to the Department of Education. **Sec 154-46 GC** provides:

"The Department of Education shall have all the powers and perform all the duties vested by law in the Industrial Commission of Ohio and the Board of Censors of Motion Picture Films by §§371-48 to 871-53 GC, both inclusive * * * "

By the provisions of §871-48 to 871-53 GC there is set up in this state a Board of Censors of Motion Picture Films, and it is provided therein that:

"It is the duty of the Board of Censors to examine and censor all motion picture films * * * to be publicly exhibited and displayed in the state of Ohio."

The charge for this service is fixed by the statute, and the money so received is paid into the state treasury to the credit of the General Revenue Fund.

The statute further provides that before any film shall be certified, the board of censors must find that in its judgment and discretion the film is of a "moral, educational or amusing and harmless character." By the provision of this section, before a moving picture is certified by this board, it must make a finding that none of the things which are objectionable under the ordinance of the city are present in the film, and with elaborate detail is set forth what must be done by the exhibitors of a film which is approved; the board of censors must issue a certificate which shall show the title of the film, whether or not it is approved in its entirety, and if any eliminations are ordered they must be set forth in the certificate, and before the exhibitor may exhibit the picture upon the screen he must exhibit the approval of the Ohio Board of Censors, as well as the number of such films, on the certificate of approval.

Enough has been said to show that the legislature has worked out in detail the plan under and by which there is a check on each and every film exhibited within the state, so that it is easily ascertainable whether the orders of the board have been complied with before the exhibition.

It is also provided in this Act that it is a criminal offense against the state to exhibit any motion picture without the approval of the board of censors, except newsreel films.

**Sec 871-53 GC** provides:

"Any person in interest being dissatisfied with any order of such board shall have the same rights and remedies as to filing a petition for hearing on the reasonableness and lawfulness of any order of such board, or to set aside, vacate and amend any order of such board as is provided in the case of persons dissatisfied with the orders of the Industrial Commission."

Any one dissatisfied with an order of the Industrial Commission may apply to the Supreme Court of the state as the court of original jurisdiction to review, reverse or modify such order, so that this statute gives the opportunity to any person who is interested, and this of course would include municipal officers, to proceed to ask for a rehearing before the board, and if refused, to appeal to the Supreme Court for a review.

The State of Ohio having set up the complete machinery for the censorship of films in this state, and having approved and certified a motion picture film, does an ordinance of a municipality which attempts to confer power upon its city manager to prohibit or order deleted a part of such motion picture, or to threaten to revoke the license of a motion picture house, for showing such picture, conflict with the general law?

The Century Dictionary has defined the word "Conflict" as follows:

"Discord of action feeling or effect; antagonism, as of interests or principles; counter-action as of causes, laws or agencies of any kind; opposing action or tendency; opposition, collision."

The Supreme Court of Ohio, in a number of cases has laid down for our guidance the proper test by which to determine whether or not there is a conflict between an ordinance and general law. Chief Justice Marshall says:

"In determining whether an ordinance is in conflict with general laws, the test is whether the ordinance permits or licenses that which the statute forbids and prohibits and vice versa." Village of Struthers v Sokol, and City of Youngstown v. Sandela, **supra.**

In **Schneiderman v Sesanstein, 121 Oh St 80**, Judge Matthias uses this language:

"In determining whether the provisions of the ordinance in question conflict with the general law governing the same subject, a proper test may be applied by the inquiry, does the ordinance prohibit an act which the statute permits, or permit an act which the statute prohibits?"

**State ex rel. Cozart v Carran, supra,** reiterates the same test and measures the ordinance there reviewed by that test.

There can be no dispute upon the proposition that an ordinance in conflict with general law is void under our Constitution.

Applying the Ohio test to this ordinance, it is my conclusion that this ordinance conflicts with general law if it be construed to apply to motion picture shows. To me it is clear that if this ordinance grants the power claimed, then the ordinance would prohibit an act which the statute permits, to-wit: the exhibition of this motion picture film.

The court is therefore of the opinion that insofar as Ordinance 184-6 attempts to confer power and authority upon the city manager to prohibit the exhibition of a motion picture which has been approved by the State Board of Censors, or to revoke a license previously granted because of such exhibition, or in any manner interfere with the exhibition of such picture, the ordinance is void and of no effect.

The state having declared its public policy by the enactment of the Moving Picture Censorship Act, and having issued its approval and certificate for the exhibition thereof, such authority cannot be questioned by any municipal ordinance except by application to the Board of Censors for a review of its action, or by an original action in the Supreme Court to have the order amended, vacated or set aside.

In **Producing Corporation v Davis, Mayor of Cleveland, 19 N. P. (N.S.), 465,** decided over twenty (20) years ago, this same conclusion was reached. If the public policy of the state be wrong, it has been and still is a proper matter for the consideration of the legislature.

The courts have no part in formulating the public policy of the state or any political subdivision thereof, but must construe and decide the law in accordance with the provisions of the Constitution and the statutes.

The plaintiff is entitled to the relief prayed for and a decree may be drawn accordingly.