**COLUMBUS LEGAL AMUSEMENT ASSOC. ET, Plaintiffs-Appellants, v COLUMBUS (CITY), Defendants-Appellees.**

Ohio Appeals, Second District, Franklin County.

No. 4068. Decided December 4, 1947.

Robert P. Duncan, Columbus, Messrs. Schwartz & Gurevitz, Schwartz of Counsel, for plaintiffs-Appellants.

Richard W. Gordon, City Attorney, Hugh K. Martin and Robert E. Leach, Asst. City Attorneys, Columbus, for defendants-appellees.

## OPINION

By HORNBECK, J.

The appeal is on questions of law from a judgment of the Common Pleas Court dismissing plaintiff's petition. The issue presented in the trial court was the validity of a certain ordinance No. 54-45, enacted by the Council of the City of Columbus under date of February 5, 1945, to license and regulate mechanical amusement devices. There are fifteen sections in the ordinance which defines a mechanical amusement device, amusement arcade, owner, exhibitor, fixes varying license

fees for mechanical amusement devices, payable on an annual basis; also fixes license fees for the operation of an amusement arcade in the sum of $175.00 per year for each place of business. By Sections 7, 8 and 9, the City Auditor is granted certain powers, which we will hereinafter discuss. Provision is made in Section 10 for an appeal from denial of the granting of a license or the revocation thereof. Certain prohibitory provisions are set out and penalties fixed for the violation thereof.

Three errors are assigned, which are covered in the briefs of counsel for the appellants under headings which we shall discuss in the order presented:

First, "That the enactment of the ordinance is ultra vires the powers of council, and illegal and void, in that there is no authority granted by the Constitution for its enactment."

It is urged that by **Article XVIII, Section 3, the Ohio Constitution,** Columbus, a charter city, is given power to adopt and enforce only such local police, sanitary and other similar regulations as are not in conflict with general laws. Citing **State, ex rel. v Sherrill, 142 Oh St 574; City of Cincinnati v Gamble, et al., 138 Oh St 220; §3657 to §3667 GC, inclusive, and §3669 to §3676 GC, inclusive; American Committee of Maternal Welfare, Inc., et al. v City of Cincinnati, 26 Abs 533;** that all general laws enacted by the legislature prior to the adoption in 1912 of **Article XVIII, Section 3, Ohio Constitution,** remained in full force and effect and may only be changed in one of three ways as set forth in the first syllabus of **State, ex rel. City of Toledo v Lynch, Auditor, 86 Oh St 71;** also, **Billings v Railway Company, 92 Oh St 478, 483.**

It is the claim of the appellants that the State has by its statutory enactments "preempted the field in the matter of granting of powers to municipalities to license businesses". The sections of the Code cited by appellants are found under Division 2, Chapter 1 of the Code under the heading "General Powers", "Enumeration of Powers". Under the sub-heading of "Peace and Morals", provision is made for the regulation of certain games, businesses and operations, and under the sub-heading of "Licenses" cities are authorized to license certain specific activities. In none of the sections found under the sub-headings is any mention made of the business or the devices, the subject matter of the ordinance here under consideration. If, therefore, it is essential to the authority of

the City of Columbus to be specifically empowered by statute to enact the ordinance covering the subject matter therein, it is not so empowered.

The sections of the Code under consideration, §3657 to §3676 GC, inclusive, were enacted long prior to the constitutional amendments of 1912, among which was Article XVIII, Sections 3 and 7. Section 3 provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limit such local police, sanitary and other similar regulations, as are not in conflict with general laws."

Section 7 provides:

"Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of Section 3, this article, exercise thereunder all powers of local self-government."

In Perrysburg, et al. v Ridgeway, etc., et al., 108 Oh St 245, the Court had under consideration an ordinance enacted by a village, without a charter, and the question was there presented whether or not such a municipality received its powers of local self-government only by virtue of a charter. Here, there is no such question, even if it had not been decided, and the power of the City of Columbus under Section 7, subject to the provisions of Section 3 of Article XVIII, is, "all powers of local self-government" "as are not in conflict with general laws". That regulation of businesses, activities and enterprises impressed with the public interest is proper subject matter for self-government of a municipality would seem obvious.

Judge Wanamaker, in the opinion at page 255, in the Perrysburg case, discussed the effect of Sections 3 and 7 of Article XVIII of our Constitution:

"Prior to 1912 there was no expressed delegation of powers to municipalities in the Ohio Constitution. Under the decision of our courts, it had been held again and again, Ravenna v Pennsylvania Co., 45 Oh St 118, 12 N. E. 445, being especially in point, that municipal power was delegated only by virtue of a statute. * * * Such power, being legislative only, could be withdrawn from the municipalities, or amended, at any session of the Legislature."

"To the sovereign people of Ohio the municipalities appealed in the constitutional convention of 1912, and the 18th Amendment, then known as the 'Home Rule' Amendment, was for the first time adopted as a part of the Constitution of Ohio, wherein the soverign people of the state expressly delegated to the sovereign people of the municipalities of the state full and complete political power in all matters of 'local self-government'."

It is manifest that the court was of opinion that the 18th Amendment to the Constitution of 1912 did enlarge the general powers of self-government of municipalities whether or not they were charter cities.

We doubt, however, if there is any necessity of marking the distinction between the powers of a municipality under the Constitution of 1912 and prior thereto, because as early as City of Canton v Nist, decided in 1859, the court had under consideration the question whether an ordinance prohibiting the opening of certain shops for business purposes on Sunday was invalid because it did not carry the exceptions provided in the statutes of the state. The court, after setting forth the section of the law empowering municipalities to make and publish by-laws and ordinances, said;

"But the powers here conferred are expressly limited, in the preceding part of the same section, to such ordinances as are 'not inconsistent with the laws of this state'."

Appellant cites **City of Toledo v Lynch, Auditor, 88 Oh St 71,** and particularly paragraph 1 of the syllabus:

"The provisions of the eighteenth article of the constitution as amended in September, 1912, continue in force the general laws for the government of cities and villages until the 15th day of November following, and thereafter until changed in one of the three modes following: (1) By the enactment of general laws for their amendment, (2) by additional laws to be ratified by the electors of the municipality to be affected thereby, (3) by the adoption of a charter by the electors of a municipality in the mode pointed out in the article."

Appellee insists that syllabus 1 of the Lynch case has not been the law of Ohio since the pronouncement of the 3rd syllabus in the Perrysburg case, which reads:

"The above constitutional grant of power to municipalities is 'self-executing', in the sense that no legislative action is necessary in order to make it available to the municipality."

We have no difficulty in this case with the pronouncement in Toledo v Lynch and the question under the law of the Lynch case or under **Article XVIII of the State Constitution** is the same, namely, is the ordinance here under consideration in conflict with any general law. To render the ordinance invalid it must be in conflict with some positive provision of the statute. Does it forbid or prohibit that which the statutes permit? Does it appear that the State has manifested a purpose to preempt the field in which licenses may be issued? The statutes are very limited in the businesses and activities of which they take cognizance and which they authorize to be regulated, licensed or permitted. Shall we then say that municipalities are precluded from regulating any other businesses? We think not. There has long been the practice of municipalities to regulate by license many activities of its residents which are not the subject of state legislation.

The situation presented here is that the State has, to a very limited degree, covered the field in which provision for regulation by licensing is set up. There is no provision of statute indicating the purpose on the part of the State to legislate exclusively in the field in which the ordinance under consideration operates and we find no conflict within the meaning of **Sections 3 and 7 of Article XVIII of the Ohio Constitution** under the test set out in the 2nd syllabus of **Village of Struthers v Sokol, 108 Oh St 263.**

The second assignment, 2(a), discussed in appellant's brief is that,

"The ordinance is unconstitutional, illegal and void, in that it constitutes the regulation of legitimate private business by license."

In support of the claim, we are cited to **Cincinnati v Correll, 141 Oh St 535, 539; Allen v Cincinnati, 37 Oh Ap 339; City of Wooster v Evans, 92 Oh St 504;** McQuillen, Municipal Corporations, 3rd Volume, 2nd Edition, Section 948. The test is whether or not the enactment of the subject matter of the ordinance is within the police power of the city, or, more specifically, does it have any reasonable relation to the public health, peace, safety, or general welfare. In making this determination,

considerable latitude of discretion must be accorded to the lawmaking power. **37 Am. Jur. 959.**

The cases cited by the appellee all support the well recognized rule that a law will not be declared to be unconstitutional unless it is manifestly so. **Marmet v State, 45 Oh St 63; Allion v The City of Toledo, 99 Oh St 416; Leis v The Cleveland Ry. Co., 101 Oh St 162; Ostrander v Preece, 129 Oh St 615.**

The unrestricted and unregulated use of amusement devices operated by coins or slugs, wherein there is a certain element of chance, even though not classified as gambling devices, may reasonably present a question involving the public welfare or the public morals. It would not seem necessary to develop this fact because it is commonly understood. The problem presented to the city is increased and made more difficult where there is presented in a limited space many such devices varying in type and allure, but all intended to have an appeal to the public, and especially the youth. Manifestly, such devices may be innocent enough in themselves, or, if properly supervised but if not regulated, may readily be the means of offending against public morals.

The well-known case of Cincinnati v Correll, supra, involved a municipal ordinance limiting and fixing the hours during which a barber shop may remain open for business. The Court held that the enactment of such an ordinance was not a valid exercise of the police power because it bore no reasonable relation to any of the requisites constituting the field within which police power may operate. In the opinion, at page 539, Judge Bell said:

"Therefore, if it is apparent that there is no plausible, reasonable and substantial connection between the provisions of the act and the supposed evils to be suppressed, there exists no authority for its enactment."

Further, at page 540, it is said:

"It would be a bold man, indeed, who would seriously assert that the hours of the day during which a barber shop could remain open for business have any real and substantial relation to the safety, morals, and general welfare of the public."

Even the Correll case is on the border line as is manifested by the dissent of three judges who were in favor of upholding the ordinance.

In Allen v City of Cincinnati, supra, the Court supported

a petition against demurrer predicated upon the claim that it was unconstitutional because an attempt to license private business, namely, the hiring of automobiles to private persons for individual use under agreements made in advance. Such service was held to be dedicated to the public use and subject to regulation.

That automatic vending machines are the proper subject of regulation by license has been generally held. These machines, vending merchandise, would, basicly, be less harmful than, but bear such relation to, automatic amusement devices, as defined in the ordinance, as to come in the same general category. Annotations to Illinois Cigarette Service Company v Chicago, et al., 111 A. L. R. 755, and Matheny v Hutchinson, 151 A. L. R. 1195. It is contended that the authorities cited in these annotations are tax and not license cases. Many are, and all are controlled by legal principles applicable here.

The next claim of the appellants, 2(b), is that,

"The true purpose of the ordinance is to raise revenue. The very provisions of the ordinance itself discloses this."

We cannot support this claim either upon the provisions of the ordinance or upon any factual development, by stipulation, in the record. That there is any marked disparity between the income that will be produced from the sale of the licenses and the cost of regulation, does not appear. The **Globe Security and Loan Co. v Carrel, Auditor, 106 Oh St 48.**

The next claim is that, 2(c):

"The ordinance is unconstitutional and invalid in that by Section 8 it delegates the City Auditor to adopt and enforce regulations governing the issuance of licenses and by Section 13 that any person who violates such rule or regulation shall be guilty of a misdemeanor."

It is asserted that this is an unlawful delegation of legislative powers, and therefore invalid.

The purpose of the ordinance and the specific places and devices to be licensed thereunder, the cost thereof, conditions under which licenses may be revoked and the penalties are specifically fixed by the ordinance. The authority granted to the City Auditor by Section 8 is administrative in that he is empowered to establish, adopt and enforce, or cause to be enforced, such rules and regulations governing the issuance of the license as required under this ordinance, as he may

deem reasonable and necessary and not inconsistent with the provisions of this ordinance. That is to say, such rules as will conform to and be consistent with the ordinance. Such authority requires no exercise of legislative power. **Green v The State Civil Service Commission, 90 Oh St 252.**

In Silberton v Davis, 10 O. C. C. (N. S.) 60, in the ordinance under consideration the mayor was granted the power to issue or refuse a license at his discretion, and it was held that this vested him with more than a ministerial or administrative duty. In **Cincinnati v Cook, 107 Oh St 223,** the ordinance under consideration authorized the supervisor of a passenger station to avoid a violation thereof by granting permission to do that which the ordinance otherwise determined to be unlawful. This was held to be an attempted delegation of legislative power. Ex parte Lewis v State, 14 O. N. P. (N. S.) 609, had under consideration an ordinance involving the licensing of operators of moving picture machines, wherein determination whether or not the licenses should be issued was left entirely to the examiners of applicants for licenses. It was held that the ordinance itself provided no standard of qualification for such operators. Here, the standard by which the Auditor is to promulgate the rules is found in the enactment which is the legislation. This recognized distinction, in our judgment, renders the ordinance immune to the attack here made upon it. **State, ex rel. Campbell v Cincinnati Railway Co., 97 Oh St 283; Harmon v State, 66 Oh St 249.**

2(d) of appellants' brief is:

"We contend that the ordinance is invalid, in that it provides that the decision of the Columbus Bureau of Licenses Commission shall be final."

Section 10 provides for an appeal from denial or revocation order to the Columbus Bureau of Licenses Commission and that the decision of the Commission thereon shall be final. This action relates to either the refusal to license any person, firm or corporation or the revoking of any licenses issued. If the rules of the City Auditor are made within the scope of the ordinance, which we have heretofore discussed, his action and the action by the Commission on review should involve no matters of strictly judicial cognizance but are within the field of administrative procedure. If, and when, the Auditor or the Commission undertakes to act upon subject matter of exclusive judicial cognizance the question of the validity and adequacy of the ordinance would become germane. For a fine

discussion of this question, see the opinion of Chief Justice Marshall in **Stanton v Tax Commission, 114 Oh St 658,** and particularly pages 666 to 681, inclusive.

The relief that may be offered one affected by the ordinance by an action in mandamus would protect him against unlawful acts by the Auditor or Commission or any order in excess of their discretionary power.

2(e) of appellants' brief is:

"We contend that the ordinance is unconstitutional in that by Section 11 it is provided that 'no person, firm or corporation shall permit any mechanical amusement device as hereinabove defined, to be played by any minor under the age of 17 years unless accompanied by a parent, guardian or other adult relative'."

What we have heretofore said under 2(a) has application to this assignment.

2(f). It is here claimed that Section 12 of the ordinance is unconstitutional as in contravention of Section 1 of the Fourteenth Amendment to the Federal Constitution and **Article I, Sections 1 and 19 of the State Constitution,** in that it provides for the seizing and destruction of private property without due process of law. The Section, 12, provides for seizure and destruction of gambling devices only if the "machine, apparatus, contrivance or device is adapted to or may be readily converted into a gambling device, which shall have been exhibited or made use of * * *, in violation of the terms of this ordinance, and in compliance with the 'provisions in the statutes of the State' relating to gambling devices."

The answer to the proposition in this assignment of error is succinctly stated in the 13th syllabus of People v One Pin Ball Machine (Ill.), 44 N. E. (2d) 950:

"The right exists, summarily and without process of judicial proceedings, to seize and destroy contraband articles and to seize articles not inherently illegal when illegally employed."

In our judgment, the safeguards set up in the section assure any one affected thereby the benefit of due process of law under either the Federal or State Constitution. The cases cited by appellees support this view, namely, **Myers v City of Cincinnati, 128 Oh St 235; Brafford v Calhoun, Chief of Police, 72 Oh Ap 333; City of Cincinnati v Flaherty, 70 Oh Ap 539.**

There are other claims which we have considered and which we hold, without further discussion, are not valid as against the ordinance as enacted.

We would be remiss if we did not acknowledge the assistance afforded by the exceptionally fine briefs of counsel in this case. They are to the point and have enabled the Court to keep its independent research to a minimum.

Without further comment on the specific assignments of error, we hold that no one of them is well made and that the ordinance is valid in all the particulars wherein it was challenged in the trial court and which are urged on this appeal.

The judgment will be affirmed.

WISEMAN, PJ, and MILLER, J, concur.