PHILMAN'S, INC., Plaintiff,

v.

CITY OF WEST CARROLLTON, et
al., Defendants.

No. C-3-83-757.

United States District Court,
S.D. Ohio, E.D.

Dec. 30, 1983.

Edward A. Lettus, Jr., Bellbrook, Ohio, for plaintiff.

Patrick G. Carney, West Carrollton, Ohio, for defendants.

DECISION AND ENTRY SETTING FORTH FINDINGS OF FACT AND CONCLUSIONS OF LAW; JUDGMENT TO BE ENTERED IN FAVOR OF PLAINTIFF; FURTHER PROCEDURES SET TO DETERMINE SCOPE OF RELIEF

RICE, District Judge.

This lawsuit challenges the legality, under the federal constitution, of an ordinance passed by the city of West Carrollton, Ohio, which regulates the sale of drug paraphernalia to minors. Based upon the uncontested facts as submitted by the parties, the following discussion will constitute the Court's findings of fact and conclusions of law, under Fed.R.Civ.P. 52(a). For the reasons set forth below, the Court finds for the Plaintiff on the sole ground that the ordinance in question is, at least in part, unduly vague on its face under the Due Process clause of the Fourteenth Amendment. Other constitutional challenges to the ordinance are either rejected or not reached. Judgment is to be entered for Plaintiff. A further hearing will be set to determine what other relief might be available to Plaintiff.

## I. FACTUAL BACKGROUND

As noted above, counsel have stipulated (doc. # 6) the relevant facts in this case, and after further briefing, have submitted the matter to this Court for disposition upon the merits. The undisputed facts indicate the following.

Plaintiff Philman's, Inc., is an Ohio corporation doing business in West Carrollton. Philman's operates out of a relatively

small, one room commercial retail sales establishment and sells "records, tapes, novelty items such as T-shirts, mugs, jewelry, posters, leather goods, smoking and snuff accessories, scales, cigarette papers, pipes, alligator clips and other items." Doc. # 6, ¶ 3.

On April 12, 1983, the City Council of West Carrollton passed Ordinance 2375, to become effective May 12, 1983. The ordinance is captioned as follows:

AN ORDINANCE ADOPTING CHAPTER 141 OF THE CODE OF ORDINANCES OF WEST CARROLLTON TO PROVIDE FOR THE REGULATION AND LICENSING OF ITEMS DESIGNED OR MARKETED FOR USE WITH ILLEGAL CANNABIS OR DRUGS, PROHIBITING SALES OF DRUG PARAPHERNALIA TO MINORS, AND TO PROVIDE A PENALTY FOR THE VIOLATION THEREOF.

A preamble is then set out, wherein the City Council expresses concern "about the increased use of illegal drugs and controlled substances within" the city, that "the sale, advertising and distribution of instruments, drug paraphernalia and simulated controlled substances contribute to an atmosphere of community acceptance of illegal use of controlled substances," and that "it is in the best interest" of the citizens of West Carrollton "to regulate within the city the sale of items designed or marketed for use with illegal cannabis or drugs."

Several requirements and prohibitions are then set out. Initially, the ordinance states that:

It shall be unlawful for any person or persons as principal, clerk, agent, servant, or employee to sell any item, effect, paraphernalia, accessory or thing which is designed or marketed for use with illegal cannabis or other drug as defined by the Ohio Revised Code, without first obtaining a license therefor, as provided herein. Such licenses shall be in addition to any or all other required licenses.

§ 141.01(A). Applications for the license are made to the Chief of Police, who also determines whether or not any given premises complies with the ordinance. § 141.-01(B), (C). The application must also be accompanied by an affidavit of each applicant, and of any person employed by the applicant, stating "that such person has never been convicted for a drug abuse offense." § 141.01(B)(5). The license fee is $500. § 141.01(B)(4). Any items regulated by the ordinance shall not be sold or given "to any male or female under the age of eighteen (18) years." § 141.01(b). The ordinance also requires each licensee to keep detailed records as to whom drug paraphernalia is sold, § 141.02, and forbids sale or display of drug paraphernalia to minors, § 141.03. Finally, the ordinance provides that any violation thereof shall be punished as a first degree misdemeanor, § 141.99, and it contains a severability clause. (A copy of the ordinance is attached as Exhibit A to this decision.)

On May 11, 1983, the city police informed Plaintiff that it would be expected to comply with the ordinance. However, counsel for the city later told Plaintiff's counsel that the ordinance would not be enforced for about 30 days. This moratorium lasted until August 2, 1983, when a city police officer served a written notice upon Plaintiff that it must comply with the ordinance within ten days, or citations would be issued for failure to comply.

Plaintiff followed with this lawsuit on August 11, 1983. Named as Defendants are the City Manager and Mayor of West Carrollton, six members of the City Council, the Chief of Police, and the City Law Director. Jurisdiction is predicated on 28 U.S.C. §§ 1331, 1343(3), 2201–2202 and 42 U.S.C. § 1983. Plaintiff alleges that the ordinance in question is overbroad and vague in violation of the Due Process clause of the Fourteenth Amendment, and discriminates against "so-called 'head shops'" in violation of the Equal Protection clause of that amendment. Complaint, ¶ 4. Plaintiff requested injunctive, declaratory, and monetary relief, restraining Defendants from enforcing the ordinance.

The parties then "agreed to enter into a consent preliminary injunction, maintaining

the status quo until the disposition" of the lawsuit on the merits. Doc. # 5.

## II. YOUNGER AND PULLMAN ABSTENTION

The decision of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its progeny severely limits a federal court's authority to interfere with ongoing state criminal and civil proceedings. However, Plaintiff's request for injunctive relief in this Court does not violate *Younger*, since no state proceeding is pending or ongoing. In addition, Plaintiff's request for declaratory relief is properly before the Court, since no state prosecution is pending, and Plaintiff has demonstrated a genuine threat of enforcement. *Steffel v. Thompson*, 415 U.S. 452, 475, 94 S.Ct. 1209, 1223–24, 39 L.Ed.2d 505 (1974). Quite understandably, Defendants do not argue that *Younger* prevents adjudication of this case.

Nevertheless, the Court finds that another form of abstention raises substantial concerns which deserve to be briefly discussed. The *Pullman* abstention doctrine, first articulated in *Railroad Commission v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), holds that a federal court should abstain from deciding federal constitutional questions if the resolution of uncertain state law issues could render moot the federal issue, or present it in a different posture. *See Ada-Cascade Watch Co., Inc. v. Cascade Resource Recovery, Inc.*, 720 F.2d 897 (6th Cir.1983), at 902; *Tyler v. Collins*, 709 F.2d 1106, 1108 (6th Cir.1983). Unlike *Younger* abstention, which is waived as a defense if defendants fail to raise it, *Ohio Bureau of Employment Services, v. Hodory*, 431 U.S. 471, 479–80, 97 S.Ct. 1898, 1903–04, 52 L.Ed.2d 513 (1977), *Pullman* abstention can be raised by the court *sua sponte*. *Muskegon Thea-*

*tres, Inc. v. City of Muskegon*, 507 F.2d 199, 201 (6th Cir.1974).

In this case, the Court was first alerted to the possibility of abstention questions when it examined the ordinance in question. As quoted above, the ordinance, in part, forbids the sale of "any item, effect, paraphernalia, accessory or thing which is designed or marketed for use with illegal cannabis or other drug as defined by the Ohio Revised Code...." Counsel make no mention of the reference to the Ohio Revised Code (O.R.C.), nor how it might impact on the disposition of this case.

Conceivably, however, some portion or portions of the O.R.C. could affect this case in two ways. First, a major thrust of Plaintiff's attack on the ordinance is that it fails to define "drug paraphernalia" in any way. Since the ordinance refers to a definition by the O.R.C., some portion of the O.R.C. could perhaps provide some or all of the allegedly missing definition. For example, a definition of "paraphernalia for the use of marihuana" is set out in O.R.C. § 2925.14(A)(1)–(4) (Page 1982). *See also*, O.R.C. § 3719, *et seq.* (Page 1980) (Controlled Substances Act). Second, it seems that the cited provision of the O.R.C., which prohibits the knowing sale of "paraphernalia for the use of marihuana to any juvenile," O.R.C. § 2925.14(B), might preempt the local ordinance under the Ohio Constitution, Art. XVIII, § 3. Both issues could arguably be considered and resolved by state courts, and justify *Pullman* abstention by this Court.[1]

Unfortunately, the Court must decide these issues without the benefit of the parties' having briefed them. Nevertheless, the Court finds that neither position, potentially requiring *Pullman* abstention, is correct. With regard to the "missing definition" argument, it appears that the mention of the O.R.C. in § 141.01(A) of the

---

1. This entire discussion, of course, assumes that O.R.C. § 2925.14 and Ch. 3719 are themselves valid under the federal constitution. However, there is little doubt that they are so valid. The latter statute is an enactment, with some changes, of the Uniform Controlled Substances Act. *See* 9 U.L.A. 187 (1979 & 1983 Supp.). The

former statute is one version of the Model Drug Paraphernalia Act (Model Act). *See* Note, 16 Ga.L.Rev. 137, 152 n. 54 (1981). As discussed *infra*, recent federal court decisions are virtually unanimous in finding both Acts to be valid under the federal constitution.

ordinance refers to the definition of "illegal cannabis or other drug," *not* to "any item, effect, paraphernalia, accessory or thing...." The United States Supreme Court, in construing a virtually identical ordinance of the Village of Hoffman Estates, Illinois, made the same construction. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 500, 102 S.Ct. 1186, 1194, 71 L.Ed.2d 362 (1982).[2] (This Court will discuss *Hoffman Estates* at greater length later in this opinion.) Thus, it appears that the O.R.C. cannot supply a definition of "drug paraphernalia" to West Carrollton's ordinance, and abstention to permit a state court to resolve that issue is unnecessary.

■ With regard to the preemption argument, it seems doubtful that Ohio's enactment of versions of the Uniform Controlled Substances Act or the Model Drug Paraphernalia Act, *see* footnote one, *supra,* would preempt West Carrollton's ordinance. Under Ohio law, the general test for determining whether or not a state statute preempts a local ordinance is "whether the ordinance permits or licenses that which the statute prohibits and vice versa." *City of Eastlake v. Ohio Board of Building Standards,* 66 Ohio St.2d 363, 368, 422 N.E.2d 598, 602, *cert. denied,* 454 U.S. 1032, 102 S.Ct. 570, 70 L.Ed.2d 476 (1981). In the instant case, the West Carrollton ordinance largely tracks certain acts forbidden by the Ohio statutes cited above.

The ordinance neither permits nor licenses any acts forbidden by those statutes. Thus, it appears likely that no preemption problems are present, and abstention on that score would be unnecessary.[3]

■ It might be argued, of course, that this Court should abstain to permit state courts to resolve these issues. However, *Pullman* abstention is not appropriate where state law issues are relatively clear, *see American Motor Sales Corp. v. Runke,* 708 F.2d 202, 207 (6th Cir.1983), and where there is little possibility that Ohio courts would rule in such a way to enable this Court to avoid reaching the federal issues. *Cf.* 17 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 4242 at 460 (1978) [hereinafter cited as Wright, Miller & Cooper]. Moreover, there is some support for the notion that *Pullman* abstention is often inappropriate in federal litigation challenging state laws on overbreadth or vagueness grounds. *See Record Revolution No. 6, Inc. v. City of Parma,* 638 F.2d 916, 925 (6th Cir.1980), *vacated and remanded on other grounds,* 451 U.S. 1013, 101 S.Ct. 2998, 69 L.Ed.2d 384 (1981), 456 U.S. 968, 102 S.Ct. 2227, 72 L.Ed.2d 840 (1982), *on later appeal,* 709 F.2d 534 (6th Cir.1983); Wright, Miller & Cooper, § 4242 at 461–63. *Cf.* Monaghan, *Overbreadth,* 1981 Sup.Ct.Rev. 1, 35–36. For these reasons, the Court concludes that *Pullman* abstention is not appropriate in this case.

2. Illinois has passed a version of the Uniform Controlled Substances Act, see 9 U.L.A. at 187, to which the Supreme Court referred. 455 U.S. at 500, 102 S.Ct. at 1194.

3. These conclusions are underscored by the Sixth Circuit's apparent treatment of Ohio's enactment of the Model Act in the *Record Revolution No. 6, Inc. v. City of Parma* litigation. The Sixth Circuit originally reversed, in most respects, 638 F.2d 916 (6th Cir.1980), a district court decision, 492 F.Supp. 1157 (N.D.Ohio 1980) upholding a city ordinance based largely on the Model Act. The Supreme Court remanded that decision for reconsideration in light of Ohio's recent enactment of a version of the Model Act. 451 U.S. 1013, 101 S.Ct. 2998, 69 L.Ed.2d 384 (1981). In a subsequent unreported decision, the Sixth Circuit reaffirmed its earlier decision, apparently either explicitly or implicitly rejecting the argument that O.R.C.

§ 2925.14 preempted, or aided in the construction of, the city ordinance. The Supreme Court then remanded that decision for reconsideration in light of *Hoffman Estates, supra,* 456 U.S. 968, 102 S.Ct. 2227, 72 L.Ed.2d 840 (1982). On that basis, the Sixth Circuit recently reversed its earlier reported decision. 709 F.2d 534 (6th Cir. 1983).

Unfortunately, the Court has no access to the Sixth Circuit's unreported decision and, in any event, it could not stand as precedent, given its unpublished status. *See* Sixth Cir.Rule 24(b). Suffice it to say, however, that if any portion of the O.R.C. had any dispositive impact on the city of Parma ordinance, it surely would have arisen in the reported decisions in that litigation.

This Court will discuss *infra* other aspects of the *Record Revolution* litigation as it pertains to this case.

## III. CONSTITUTIONAL CHALLENGES

 In any lawsuit brought under 42 U.S.C. § 1983, as in the case at bar, a plaintiff must demonstrate that defendants deprived it of rights secured by the federal constitution or laws of the United States, and that the deprivation occurred under color of state law. *Bier v. Fleming,* 717 F.2d 308, 310 (6th Cir.1983). Herein, the parties contest only the first issue, that is, whether, when considering the ordinance on its face, rather than as applied, enforcement of same violates Plaintiff's rights to due process and equal protection under the Fourteenth Amendment.

Generally, states and cities have passed one of three types of drug paraphernalia statutes or ordinances. Some jurisdictions prohibit the sale and possession of drug paraphernalia, typically enforced by civil penalties. Other statutes or ordinances, tracking the Model Drug Paraphernalia Act (Model Act), *see* footnote one, *supra,* prohibit the sale and possession of drug paraphernalia, usually enforced with criminal penalties. Finally, a few cities have passed ordinances which merely *regulate* the sale of paraphernalia, rather than banning it outright. *See Record Head Corp. v. Sachen,* 682 F.2d 672, 674 (7th Cir.1982); Casenote, 73 J.Crim.L. & Criminology 1365, 1375–76 (1982) [hereinafter cited as JCLC Note].

Most statutes and ordinances fall under the first two forms, and have been the subject of extensive litigation in the federal courts. These cases need not be cited or discussed in this opinion at any length. Suffice it to say that the more recent decisions have been virtually unanimous in upholding these statutes and ordinances against constitutional attacks, particularly

in the wake of the Supreme Court's decision in *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) (*Hoffman Estates*).[4]

The West Carrollton ordinance is of the third type, which has been the subject of very little litigation. However, the Supreme Court in *Hoffman Estates* upheld a similar ordinance in the face of constitutional attacks, and that decision will provide the major precedent for this Court to follow and apply. The *Hoffman Estates* decision devoted the bulk of its analysis to the overbreadth and vagueness attacks upon the ordinance, which Plaintiff herein also advances. Before reaching those arguments, this Court will briefly address other constitutional challenges raised by Plaintiff.

### A. EQUAL PROTECTION AND OTHER CHALLENGES

 In its complaint and memorandum, Plaintiff argues that the West Carrollton ordinance, on its face, violates the Equal Protection clause by "discriminating" against "head shops," the vernacular term for stores which sell drug paraphernalia. The contours of this argument are not entirely clear. Ordinance 2375 does not appear to establish any explicit classification at all; it merely regulates *any* establishment which happens to sell drug paraphernalia. *See Stoianoff v. Montana,* 695 F.2d 1214, 1223 (9th Cir.1983) (Model Act). To the extent the ordinance implicitly establishes a classification, the Court finds that it easily passes equal protection analysis. The ordinance neither adversely effects a fundamental interest[5] nor contains a classification based upon a suspect criterion. It "need only be tested under the

---

4. A listing of the many cases, both before and after *Hoffman Estates,* involving constitutional challenges to the first two types of statutes and ordinances, can be found at *Record Revolution No. 6, Inc. v. City of Parma,* 709 F.2d 534, 536 (6th Cir.1983); *Pennsylvania Accessories Trade Assoc., Inc. v. Thornburgh,* 565 F.Supp. 1568, 1571 n. 4 (M.D.Pa.1983); Comment, *Pre-Enforcement Constitutional Challenges to Legislation after Hoffman Estates: Limiting the Vagueness and Overbreadth Doctrines,* 20 Harv.J.Leg-

is. 617, 619 n. 16, 623 n. 39 (1983) [hereinafter cited as Harvard Comment].

5. As explained by the Supreme Court in *Hoffman Estates,* an ordinance like West Carrollton's, at least when considered facially, does not invade any First or Fourth Amendment rights of a "head shop" owner. 455 U.S. at 496–97, 504 n. 22, 102 S.Ct. at 1192–93, 1196 n. 22. *See also* footnote 8, *infra.*

lenient standard of rationality ... traditionally applied in considering equal protection challenges to regulation of economic and commercial matters." *Exxon Corp. v. Eagerton*, —— U.S. ——, 103 S.Ct. 2296, 2308, 76 L.Ed.2d 497 (1983). Under that standard, the ordinance will be sustained if the drafters "could have reasonably concluded that the challenged classification would promote a legitimate state purpose." *Id.* (citing numerous cases). In their preamble to the ordinance, the City Council set out various reasons why "head shops" and similar businesses are likely to sell drug paraphernalia and affect use of controlled substances. Control of illegal drugs is plainly a legitimate goal of government, *Robinson v. California*, 370 U.S. 660, 664, 82 S.Ct. 1417, 1419, 8 L.Ed.2d 758 (1962), and this Court concludes, as have all courts in analogous cases, that the West Carrollton ordinance does not establish an improper classification. *See, e.g., Camille Corp. v. Phares*, 705 F.2d 223, 228 (7th Cir.1983); *Record Head Corp. v. Sachen*, 682 F.2d at 678–79.

Plaintiff also argues that the risk of discriminatory enforcement of the ordinance, due to lack of guidelines, raises equal protection problems. Recalling that Plaintiff is only launching a pre-enforcement, facial attack on the ordinance, this argument is deferred for another day, or considered, if at all, under the vagueness analysis considered *infra*. *See Hoffman Estates*, 455 U.S. at 503–04, 102 S.Ct. at 1195–96.

 Finally, Plaintiff argues, by way of memorandum (doc. # 8, p. 5) [6], that the portion of the ordinance requiring affidavits of an establishment owner and employees creates unlawful irrebuttable presump-

tions. To the extent the irrebuttable presumption doctrine is still viable at all, *cf. Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 533–35 (6th Cir. 1981); *but see Martinez v. Bynum*, —— U.S. ——, 103 S.Ct. 1838, 1843 n. 10, 75 L.Ed.2d 879 (1983) (entertaining irrebuttable presumption challenge but rejecting same), the Court does not find it violated by the West Carrollton ordinance. The ordinance, as noted above, requires establishment owners and employees,[7] as a condition of obtaining a license, to submit affidavits stating that "such person has never been convicted of a drug abuse offense." Plaintiff seems to think that this requirement creates an irrebuttable presumption that a person who *has* been convicted of a drug offense is not fit to run a head shop. Assuming that characterization is proper, the irrebuttable presumption doctrine does not bar use of such a criterion. As the Sixth Circuit discussed in *Kirk, supra*, the doctrine has been relaxed when neither fundamental constitutional rights nor invidious classifications are involved. 667 F.2d at 534. Neither circumstances obtains with the West Carrollton ordinance. When purely economic matters are regulated, as herein, the challenged criterion need only bear a rational relationship to the legitimate goals of the ordinance. *Id.* at 534–535. On that basis, it would not be irrational for the drafters of the ordinance to have concluded that persons with prior drug offenses are not fit to run head shops, or not be expected to fully comply with laws regulating drug use.

 For these reasons, the Court rejects the equal protection and related challenges to the ordinance advanced by Plaintiff.[8]

In its complaint and memorandum, Plaintiff contends that the ordinance contains no scienter requirement, and thus establishes a strict liability offense. This appears to be a correct characterization of the ordinance. *See Hoffman Estates*, 455 U.S. at 499–502, 102 S.Ct. at 1193–1195 (discussing scienter requirement of similar ordinance). However, such strict liability offenses, in the criminal or quasi-criminal context, do not contravene any provision of the federal constitution. *See United States v. United States Gypsum Co.*, 438 U.S. 422, 437–38, 98

---

**6.** This challenge is not expressly mentioned in the complaint. Arguably, Plaintiff should be required to amend its complaint before raising such an argument.

**7.** It is doubtful that Plaintiff would have standing to raise the rights of one of its employees. *See Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975).

**8.** Three other challenges raised by Plaintiff deserve brief mention.

## B. OVERBREADTH CHALLENGE

■ The Supreme Court in *Hoffman Estates*, considering a similar city ordinance, stated that:

> In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail.

455 U.S. at 494, 102 S.Ct. at 1191 (footnotes omitted). The Court went on to hold that the ordinance did not directly infringe any non-commercial speech of a head shop owner or its customers, *id.* at 496, 102 S.Ct. at 1192. To the extent any commercial speech was implicated, the Court further held that it either involved illegal acts by owners, which the government can regulate or bar entirely, or the protected commercial speech of other persons, to which the overbreadth doctrine does not apply. *Id.* at 496–97, 102 S.Ct. at 1192–93. Thus, the overbreadth challenge failed.

An identical analysis applies to the within case, given that the Supreme Court in *Hoffman Estates* was considering identical language in a similar city ordinance. Accordingly, Plaintiff's challenge to the West Carrollton ordinance on overbreadth grounds must also fail.

## C. VAGUENESS CHALLENGE

After holding that the challenged ordinance was not overbroad, the Court in *Hoffman Estates* went on to state that:

> A law that does not reach constitutionally protected conduct and therefore satisfies the overbreadth test may nevertheless be challenged on its face as unduly vague, in violation of due process. To succeed, however, the complainant must demonstrate that the law is impermissibly vague in all of its applications.

455 U.S. at 497, 102 S.Ct. at 1193.

The Court then set out the contours of a void-for-vagueness test.

The standards for evaluating vagueness were enunciated in *Grayned v. City of Rockford*, 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972):

> "Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates

S.Ct. 2864, 2873–74, 57 L.Ed.2d 854 (1978); W. LaFave & A. Scott, Criminal Law 144–45 (1972).

By way of memorandum, Plaintiff also contends that the reporting requirements of the ordinance violates the owner's right to privacy. It is not entirely clear that such a claim is cognizable in a pre-enforcement, facial attack on the ordinance. *Cf. Hoffman Estates*, 455 U.S. at 504 n. 22, 102 S.Ct. at 1196 n. 22 (declining to address similar Fourth Amendment claim). Moreover, the asserted privacy rights actually seem to be those of *customers*, not the *owner*. Those customers, not the owner, should be the ones to litigate the alleged invasion of their privacy rights. *Warth v. Selden, supra; Mid-Atlantic Accessories Trade Assoc. v. Maryland,* 500 F.Supp. 834, 849–50 (D.Md.1980) (similar challenge to Model Act).

Finally, Plaintiff argues, by way of memorandum, that the reporting requirements of the ordinance violates the associational rights of the owner under the First Amendment. Once

again, it is not clear that such a challenge should be reached in the pre-enforcement setting. Even if it should be, the Court finds that the ordinance invades no associational rights of the owner, since the purely economic regulation of the ordinance has only an incidental effect on the rights of association and speech guaranteed by the First Amendment. *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 102 S.Ct. 3409, 3425, 73 L.Ed.2d 1215 (1982); *Buckley v. Valeo,* 424 U.S. 1, 64–74, 96 S.Ct. 612, 656–61, 46 L.Ed.2d 659 (1976) (per curiam). This conclusion is buttressed by the fact that most cases, both in the Supreme Court and lower courts, have discussed the First Amendment right to association in connection with free speech rights, and regulation of specific groups. *See* Raggi, *An Independent Right to Freedom of Association,* 12 Harv.Civ.Rts.Civ.Lib.L.Rev. 1 (1977). Neither circumstance obtains with the West Carrollton ordinance.

basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory applications" (footnotes omitted).

These standards should not, of course, be mechanically applied. The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depend in part on the nature of the enactment. Thus, economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process. The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe. And the Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.

Finally, perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights. If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply.

*Id.* at 498–99, 102 S.Ct. at 1193–94 (footnotes omitted).

Applying these principles, the Court overruled the facial challenge to the ordinance. Initially, the Court observed that the village ordinance was "quasi-criminal" in nature, which warranted "a relatively strict test," *id.* at 499, 102 S.Ct. at 1194 (footnote omitted) as to vagueness. Nevertheless, the ordinance passed muster

even under that standard. *Id.* at 500, 102 S.Ct. at 1194. The Court principally focused on the language in the ordinance regulating drug paraphernalia "designed or marketed for use" with illegal drugs. Those phrases, the Court held, were sufficiently clear when read in light of the plain meaning of the words, and the licensing guidelines promulgated with the ordinance. *Id.* at 500–03, 102 S.Ct. at 1194–96. The guidelines defined or listed examples of "items, effect, paraphernalia, accessory or thing which is designed or marketed for use with" illegal drugs. *Id.* at 492–93 n. 3, 102 S.Ct. at 1190–91 n. 3. The Court thus concluded that the village ordinance was not unconstitutionally vague, since it provided "fair warning" of its prohibitions and would not result in discriminating enforcement. *Id.* at 503, 102 S.Ct. at 1195–96.

The parties herein acknowledge that the West Carrollton ordinance is virtually identical, in most respects, to the ordinance upheld in *Hoffman Estates*. On that basis, Defendants argue that the same result of validity should apply. Plaintiff concedes the obvious relevance of *Hoffman Estates*, but points out one important distinction: unlike the Village of Hoffman Estates, West Carrollton did *not* promulgate definitional guidelines with the ordinance. Given the importance attached to such guidelines by the *Hoffman Estates* decision, Plaintiff contends that the absence of such guidelines renders the West Carrollton ordinance invalid on vagueness grounds.

The Court must agree with Plaintiff. The Supreme Court in *Hoffman Estates* relied extensively on the guidelines in its void-for-vagueness discussion. 455 U.S. at 500–02, 102 S.Ct. at 1194–95. It is clear that the ordinance would have encountered far greater difficulty without the aid of the guidelines. Indeed, at one point the Court stated that "the words 'items, effect, paraphernalia, accessory or thing' do not identify the type of merchandise that the village desires to regulate." *Id.* at 500, 102 S.Ct. at 1194. In a footnote to that sentence, the Court added:

The District Court apparently relied principally on the growing vernacular understanding of "paraphernalia" as

drug-related items, and therefore did not separately analyze the meaning of "designed or marketed for use." 485 F.Supp. [400], at 405–407. We agree with the Court of Appeals that a regulation of "paraphernalia" alone would not provide much warning of the nature of the items regulated. 639 F.2d [373], at 380.

*Id.* 455 U.S. at 500 n. 17, 102 S.Ct. at 1194 n. 17.

 Commentators following *Hoffman Estates* have emphasized the importance and necessity of defining "paraphernalia" and other words of an ordinance, through interpretative guidelines or otherwise. Harvard Comment at 623 & nn. 36–37; JCLC Note at 1383. *See also* Note, *The Constitutionality of Drug Paraphernalia Laws*, 81 Colum.L.Rev. 581, 592–600 (1981). More importantly, two post-*Hoffman Estates* decisions have emphasized the importance of such guidelines. In one case, the court struck down a local ordinance which did not adequately define "instruments ... designed for use or intended for use" with a controlled substance. *Record Head Corp. v. Sachen*, 682 F.2d at 677–78. In another case, the court upheld a criminal ordinance that did not contain specific guidelines, but that deficiency was cured by a scienter requirement. *Nova Records, Inc. v. Sendak*, 706 F.2d 782, 789–91 (7th Cir.1983). As the Supreme Court stated in *Hoffman Estates*, "a scienter requirement may mitigate a law's vagueness ...." 455 U.S. at 499, 102 S.Ct. at 1193. The West Carrollton ordinance contains no such broad scienter requirement which might cure the lack of guidelines.[9]

Defendants attempt to circumvent the problem of lack of guidelines in two ways. First, they point to the recent culmination of the *Record Revolution* litigation in the Sixth Circuit, wherein the Court upheld a local ordinance by applying *Hoffman Estates.* 709 F.2d 534 (6th Cir.1983). *See* footnote three, *supra.* However, the ordinance addressed in that case is based on the Model Act, and is not closely analogous to the West Carrollton ordinance. Indeed, the ordinance considered in *Record Revolution* contained an extensive definition of "drug paraphernalia" and other relevant terms. *See* 492 F.Supp. at 1161–62; 638 F.2d at 920. Thus, differences between the two ordinances greatly lessens the precedential weight of the *Record Revolution* litigation to the instant case.

Second, Defendants argue that the absence of definitional guidelines is not significant, since "Plaintiff has the burden of seeking out exactly what type of behavior is proscribed." Defendants' Reply Brief, doc. # 9, p. 2. *See also, Hoffman Estates,* 455 U.S. at 498, 102 S.Ct. at 1193 ("Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process.") (footnote omitted). However, the decision which Defendants cite in support, *Diebold, Inc. v. Marshall,* 585 F.2d 1327 (6th Cir.1978), involved procedures under the federal Occupational Safety and Health Review Commission, wherein businesses could look "to the language of the regulations or to industry practice," *id.* at 1337 (footnote omitted) to determine if certain actions were covered by the regulations. (Even in that case, the suggested procedure was held insufficient to cure vagueness problems of a statute. *Id.*)

The same difficulties are attendant herein. The West Carrollton ordinance contains no "administrative process" which might enable Plaintiff to determine whether certain of its business practices fall under the terms of the ordinance.[10] Nor is it reasonable to require that Plaintiff "clarify

---

9. As the *Hoffman Estates* decision observed, only the "marketed for use" portion of the ordinance contains a scienter requirement. 455 U.S. at 499, 501 n. 19, 502, 102 S.Ct. at 1193, 1195 n. 19. But even in interpreting that phrase, the Supreme Court made reference to the guidelines. *Id.* at 502, 102 S.Ct. at 1195. Thus, it is doubtful that the limited scienter requirement in the West Carrollton ordinance cures the lack of guidelines.

10. In *Hoffman Estates,* the Supreme Court observed that the Village therein had a procedure for the promulgation of such "interpretative rules upon request, although none existed "because no one had yet applied for a license." 455

the meaning of the [ordinance] by its own inquiry," given the Supreme Court's emphasis in *Hoffman Estates*, as outlined above, that the ordinance, construed without definitional guidelines, presents significant vagueness problems.[11]

■■■ For all of these reasons, the Court holds that § 141.01(A) of the West Carrollton ordinance (referring to "any items, effect, paraphernalia, accessory or thing") is void-for-vagueness under the Due Process clause of the Fourteenth Amendment.

## IV. CONCLUSION

Based on the aforesaid, the Court holds that at least one portion of the ordinance § 141.01(A), (referring to "any items, effect, paraphernalia, accessory or thing") is unconstitutionally vague. Judgment will be entered for Plaintiff, and the preliminary injunction, previously entered into by consent of the parties will continue in effect, until the entry of final judgment herein. A declaratory judgment is also entered to the same effect, pursuant to Fed.R. Civ.P. 57. On Monday, January 9, 1984, at 8:20 a.m., a conference call will be held with counsel to determine if a permanent injunction would be appropriate, and what effect, if any, the severability clause of the ordinance will have on the Court's ruling on the constitutional issues. Other relief possibly available to Plaintiff can be discussed, and Defendants' counsel may wish to address what steps it might desire to take to rectify the constitutional infirmities in the ordinance found by this Court. *See Record Head Corp. v. Sachen*, 682 F.2d at 679 (discussing similar issues).

---

| National Graphics Corp., Cols., O. | Form No. 2806–A |
| --- | --- |

| Ordinance No. ____2375____ | Passed ____APRIL 12____ 19_83_ |
| --- | --- |

---

AN ORDINANCE ADOPTING CHAPTER 141 OF THE CODE OF ORDINANCES OF WEST CARROLLTON TO PROVIDE FOR THE REGULATION AND LICENSING OF ITEMS DESIGNED OR MARKETED FOR USE WITH ILLEGAL CANNABIS OR DRUGS, PROHIBITING SALES OF DRUG PARAPHERNALIA TO MINORS, AND TO PROVIDE A PENALTY FOR THE VIOLATION THEREOF.

WHEREAS, the City Council of the City of West Carrollton, Ohio, has become concerned about the increased use of illegal drugs and controlled substances within the City; and,

WHEREAS, the sale, advertising and distribution of instruments, drug paraphernalia and simulated controlled substances contribute to an atmosphere of community acceptance of illegal use of controlled substances and the City Council recognizes that such items are presently legal retail items and that presently their sale cannot be absolutely banned; and

WHEREAS, there is evidence that these items are designed or marketed for use with illegal cannabis or drugs and it is in the best interest of the health, safety and welfare of the citizens of the City of West Carrollton to regulate within the City the

U.S. at 493 n. 4, 102 S.Ct. at 1190 n. 4. The Supreme Court did not refer to this procedure later in the opinion, presumably because the guidelines cured the vagueness problems. The record herein does not indicate that West Carrollton has any similar procedures to issue interpretative rules.

**11.** Thus, it would be unfair in the circumstances of this case to require Plaintiff to know the meaning of the ordinance "either as a matter of ordinary commercial knowledge or by simply making a reasonable investigation [at another place of business]." *McGowan v. Maryland,* 366 U.S. 420, 428, 81 S.Ct. 1101, 1106, 6 L.Ed.2d 393 (1961). The *Hoffman Estates* decision cited *McGowan* for the proposition that, in some cases, private inquiry can be expected of businesses. 455 U.S. at 498 n. 12, 102 S.Ct. at 1193 n. 12.

sale of items designed or marketed for use with illegal cannabis or drugs.

NOW, THEREFORE, the Municipality of West Carrollton, State of Ohio, hereby ordains:

*Section 1.* That the following be, and hereby is, adopted and shall hereafter be known as Chapter 141 of the Code of Ordinances of the City of West Carrollton:

## CHAPTER 141

## LICENSING OF ITEMS DESIGNED OR MARKETED FOR USE WITH ILLEGAL CANNABIS OR DRUGS

*Section 141.01 License Required.*

(A) It shall be unlawful for any person or persons as principal, clerk, agent, servant, or employee to sell any item, effect, paraphernalia, accessory or thing which is designed or marketed for use with illegal cannabis or other drug as defined by the Ohio Revised Code, without first obtaining a license therefor, as provided herein. Such licenses shall be in addition to any or all other required licenses.

(B) Annual applications for licenses shall be made to the Chief of Police upon forms supplied by his office and shall require that the following be furnished:

(1) The name of the applicant and of each of its officers, partners, business associates, and managers.

(2) The location of the enterprise and its name, if different from applicant's name.

(3) Acknowledgment and representation by applicant that it is familiar with the requirements of this Chapter and will inform all persons it employs within this Municipality of the requirements thereof.

(4) The annual license fee shall be Five Hundred Dollars ($500.00). Such licenses are not transferable.

(5) Such application shall be accompanied by an Affidavit by each individual applicant and each person employed by the applicant within the Municipality that such person has never been convicted of a drug abuse offense.

(6) A separate license shall be required for each location at which drug parapher-

nalia is sold or held for sale within this Municipality.

(C) Within fifteen (15) days after an application is received for such licenses, an inspection of the premises will be made by the Chief of Police or his designated representative for the purpose of determining whether the premises comply with requirements of this Chapter. In particular, any such premises must be reasonably designed so as to limit the uncontrolled entry of minors into an area where drug paraphernalia is either sold or displayed.

(D) It shall be unlawful to sell or give items regulated by this Ordinance in any form to any male or female under the age of eighteen (18) years.

*Section 141.02 Required Records.*

(A) Every licensee must keep an accurate record of every item, effect, paraphernalia, accessory or thing which is designed or marketed for use with illegal cannabis or drugs which is sold by the licensee or his employees or agents and this record shall be open to the inspection of any police officer at any time during the business hours of the establishment selling these items.

(B) Such records shall contain the following information:

(1) The name and address of the purchaser.

(2) The name and quantity of the product and the generic name or type of product.

(3) The date and time of sale.

(4) The licensee or his agent's signature.

(5) The type of identification used to verify the age of the purchaser.

(C) The records described in Section (A) and (B) shall be retained by the licensee for not less than two (2) years and shall be open to the inspection of the Chief of Police or his designated representative upon request anytime during that two-year period.

*Section 141.03 Sale or Display to Minors Regulated.*

(A) No person shall sell, or offer for sale any drug paraphernalia to any minor, un-

less the minor is accompanied by his parent(s) or legal guardian.

(B) No person shall permit any minor to enter, view the interior of, or remain in any room or enclosure wherein drug paraphernalia is sold, offered for sale or displayed for sale unless such minor is accompanied by his parent(s) or legal guardian. Each entrance to any such room or enclosure must be conspicuously posted with a sign which states that the entry of minors into such room or enclosure unless accompanied by a parent or legal guardian is prohibited.

(C) No person shall display for sale or permit the display for sale of drug paraphernalia under circumstances where it is likely to be viewed by minors other than as permitted under Paragraph (B) of this Section.

### Section 141.04 Exceptions.

This Chapter shall not apply to any of the following:

(A) Any pharmacist or other authorized person who sells or furnishes drug paraphernalia described in this Ordinance on the prescription of a physician, dentist, podiatrist, or veterinarian.

(B) Any physician, dentist, podiatrist, or veterinarian who furnishes or prescribes drug paraphernalia covered by this Ordinance to their patients.

(C) Any manufacturer, wholesaler, or retailer licensed by the Ohio State Board of Pharmacy to sell or transfer drug paraphernalia covered by this Ordinance.

### Section 141.99 Fine and Penalty.

Whoever violates any provision of this Ordinance shall be guilty of a misdemeanor of the first degree. Each day that a violation continues shall be considered a separate violation.

*Section 2.* The City Council hereby declares that it would have passed this Ordinance sentence by sentence, paragraph by paragraph, and section by section, and does hereby declare that the provisions of this Ordinance are severable and if for any reason any sentence, paragraph, or section of this Ordinance shall be held invalid, such decision shall not affect the validity of the remaining parts of this Ordinance.

*Section 3.* This Ordinance shall take effect from and after the earliest period allowed by law.

Passed: _____

_____
Mayor

Attest: _____
 Clerk of Council

Effective Date: _____

This Ordinance Prepared By:

Patrick G. Carney
_____
Patrick G. Carney, Law Director

CITY OF WEST CARROLLTON
DIVISION OF POLICE

IDENTIFICATION # _____

DATE ISSUED _____

DATE EXPIRES _____

| (NAME OF BUSINESS) | (ADDRESS) | (PHONE ) |
|---|---|---|

(APPLICANT's NAME)

| (APPLICANT's ADDRESS) | | (PHONE ) |
|---|---|---|

* NAMES OF ALL OFFICERS, PARTNERS, BUSINESS ASSOCIATES, AND MANAGERS:

_____ _____

_____ _____

_____ _____

* ALL PERSONS LISTED INCLUDING APPLICANT, MUST FILE AN AFFIDAVIT UPON APPLICATION, THAT EACH INDIVIDUAL APPLICANT AND EACH PERSON EMPLOYED BY THE APPLICANT WITHIN THE MUNICIPALITY, THAT SUCH PERSON HAS NEVER BEEN CONVICTED OF A DRUG ABUSE OFFENSE.

ISSUANCE OF A LICENSE, AND THE ACCEPTANCE BY APPLICANT THEREOF, IS AN ACKNOWLEDGEMENT BY THE APPLICANT, THAT THEY ARE FAMILIAR WITH THE REQUIREMENTS OF THIS CHARTER AND WILL INFORM ALL PERSONS IT EMPLOYS WITHIN THIS MUNICIPALITY OF THE REQUIREMENTS STATED THEREIN.

THE ANNUAL LICENSE FEE SHALL BE FIVE HUNDRED DOLLARS ($500.00). SUCH LICENSES ARE NOT TRANSFERRABLE.

A SEPARATE LICENSE SHALL BE REQUIRED FOR EACH LOCATION AT WHICH DRUG PARAPHERNALIA IS SOLD OR HELD FOR SALE WITHIN THIS MUNICIPALITY.

WHOEVER VIOLATES ANY PROVISION OF ORDINANCE 2375 SHALL BE GUILTY OF A MISDEMEANOR OF THE FIRST DEGREE. EACH DAY THAT A VIOLATION CONTINUES SHALL BE CONSIDERED A SEPARATE VIOLATION.