IN RE DECERTIFICATION OF EASTLAKE:
CITY OF EASTLAKE, APPELLANT, *v.*
OHIO BOARD OF BUILDING STANDARDS ET AL., APPELLEES.

(No. 80-1094—Decided June 10, 1981.)

*Mr. Theodore R. Klammer,* law director, for appellant.

*Messrs. Vorys, Sater, Seymour & Pease, Mr. Robert E. Leach* and *Mr. William F. Brown* for appellee Cardinal Industries.

*Mr. William J. Brown,* attorney general, *Mr. Karl W. Schedler* and *Mr. W. Scott Lavelle,* for appellee Board of Building Standards.

CLIFFORD F. BROWN, J.   The issue to be decided is whether approval of the use of an industrialized unit[1] by the board pur-

---

[1] The last paragraph of R. C. 3781.10 provides:

"As used in sections 3781.10 to 3781.18 and 3791.04 to 3791.07 of the Revised Code, 'industrialized unit' means an assembly of materials or products comprising all or part of a total structure which, when constructed, is self-sufficient or substantially self-sufficient, and when installed constitutes the structure or part of a structure, except for preparations for its placement."

suant to R. C. Chapter 3781 precludes local authorities from imposing higher standards of construction on these units. After careful examination of the provisions of R. C. Chapters 3781 and 3791, we conclude that the General Assembly intended approval by the board of a particular industrialized unit to authorize use of the units throughout Ohio. To the extent the approved industrialized unit conflicts with local building ordinances, those ordinances are superseded and are invalid.

The relationship between local building ordinances and the state building code is explained in R. C. 3781.01 as follows:

"Chapters 3781 and 3791 of the Revised Code do not prevent the legislative authority of a municipal corporation from making further and additional regulations, *not in conflict with* such chapters or with the rules and regulations of the board of building standards. Such chapters or the rules and regulations of the board of building standards do not modify or repeal any portion of any building code adopted by a municipal corporation and in force on September 13, 1911, which is *not in direct conflict with* such chapters or with such rules and regulations." (Emphasis added.)

The principle that local ordinances may not conflict with the state building code or rules of the board is repeated in R. C. 3781.11 as follows:

"The rules and regulations of the board of building standards shall:

"* * *

"(D) Encourage, so far as may be practicable, the standardization of construction practices, methods, equipment, material, and techniques, including methods employed to produce industrialized units.

"The rules and regulations of the board of building standards shall supersede and govern any order, standard, rule or regulation of * * * [other state authorities] and of counties and townships, in all cases where such orders, standards, rules or regulations are *in conflict with* the rules and regulations of the board of building standards. [Emphasis added.]

"The construction, alteration, erection, and repair of buildings including industrialized units, and the materials and devices of any kind used in connection therewith and the heating and ventilating thereof and the plumbing and electric

wiring therein shall conform to the statutes of this state or the rules and regulations adopted and promulgated by the board of building standards, and to provisions of local ordinances *not inconsistent therewith.\*\*\**'' (Emphasis added.)

The procedure that builders of industrialized units must follow to gain local approval for construction is delineated in R. C. 3791.04 as follows:

"Before entering into contract for or beginning the construction, erection, or manufacture of any building to which section 3781.06 of the Revised Code is applicable, including all industrialized units, the owner shall, in addition to any other submission of plans or drawings, specifications, and data required by law, submit the plans or drawings, specifications, and data prepared for the\*\*\*[particular industrialized unit] which\*\*\*shall indicate thereon the portions that have been approved pursuant to section 3781.12 of the Revised Code, for which no further approval shall be required, to the municipal\*\*\*building department having jurisdiction if such department has been certified as provided in division (E) of section 3781.10 of the Revised Code\*\*\*."

Cardinal petitioned and obtained approval of the use of this particular industrialized unit from the board, pursuant to R. C. 3781.12, which in part provides:

"\*\*\*The issuance of the authorization for the use of the materials or assemblages described in the petition shall constitute approval for their use anywhere in Ohio."

Upon compliance with the procedure outlined in R. C. 3791.04, Cardinal was entitled to approval of the use of this industrialized unit in Eastlake. Failure of the building commissioner for Eastlake to approve this use gave Cardinal standing as a "person affected" pursuant to R. C. 3781.10(E)(6)[2] to petition the board for revocation of certification of Eastlake as local enforcement authority of the state building code. At hear-

---

[2] R. C. 3781.10(E)(6) provides:

"Such certification may be revoked or suspended with respect to any or all of the building occupancies to which it relates on petition to the board of building standards by any person affected by such enforcement or approval of plans, or by said board on its own motion. Hearings shall be held and appeals permitted on any such proceedings for certification or for revocation or suspension of certification in the same manner as provided in section 3781.101 of the Revised Code for other proceedings of the board of building standards."

ings conducted August 18 and September 29, 1978, Eastlake had an opportunity to present evidence showing why it should not be decertified. Although the final order decertifying Eastlake took the form of a rule, the procedure followed by the board was an adjudicatory hearing conforming to R. C. Chapter 119, and authorized in R. C. 3781.101.[3]

Eastlake contends that the state building code provides *minimum* building standards for industrialized units, and does not preclude local authorities from imposing higher standards of construction. Although R. C. Chapter 3781 in several sections provides that the standards therein are the lawful minimum for public buildings and industrialized units, the thrust of these sections dealing with industrialized units is to encourage their use throughout the state. To that end, the relevant statutes, in R. C. Chapters 3781 and 3791, establish a one-step approval process for industrialized units, through the board, which constitutes "approval for their use anywhere in Ohio." See R. C. 3781.12. To allow local authorities to impose higher or different standards on these units would defeat the avowed purpose of the state building code to encourage standardization of construction "methods employed to produce industrialized units." See R. C. 3781.11(D). Standardization of industrialized units, as described in R. C. Chapter 3781, necessarily precludes imposition of local requirements which conflict with the practices approved for statewide use. This is not the case with public buildings not using factory produced modules as the basic unit of construction. In those cases, the statutes do

---

[3] R. C. 3781.101, in part, provides:

"The provisions of sections 119.03 and 119.11 of the Revised Code in particular, and the applicable provisions of Chapter 119. of the Revised Code in general, shall govern the proceedings of the board of building standards in adopting, amending, or rescinding rules and regulations pursuant to section 3781.10 of the Revised Code, and the proceedings under sections 3781.12, 3781.13 and 3781.14 of the Revised Code, in addition to the procedural provisions of such sections.

"* * *

"Notwithstanding the provisions of section 119.11 of the Revised Code, in any proceedings commenced under section[s] 3781.10, 3781.12, 3781.13 and 3781.14 of the Revised Code, the jurisdiction of the court of common pleas of Franklin county shall not be confined to the record as certified to it by the board, but shall receive such additional evidence as it shall permit any party to offer; and the court shall not affirm the order or rule of the board unless the preponderance of the evidence before it supports the reasonableness and lawfulness of such order or rule."

provide minimum standards only, and local authorities may impose higher standards consistent with local ordinances. With industrialized units, however, a standard of construction is necessary to effectuate the legislative intent to encourage use of this type of construction throughout Ohio.

Eastlake's action in imposing more restrictive standards of construction on the industrialized units by ordinance than those mandated by the Ohio Building Code is in conflict with the general laws, and gave the board just cause for revoking its certification as local enforcement authority of the state code.

The conclusion we reach is consistent with application of the home rule powers of municipalities expressed in Section 3, Article XVIII of the Ohio Constitution, which provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations *as are not in conflict with general laws.*" (Emphasis added.)

R. C. Chapters 3781 and 3791 are general laws of the state and constitute police regulations. *Bogen* v. *Clemmer* (1932), 125 Ohio St. 186; *Niehaus* v. *State, ex rel. Bd. of Edn.* (1924), 111 Ohio St. 47. A statute which sets forth police, sanitary and similar regulations uniformly statewide is a general law for purposes of Section 3, Article XVIII of the Ohio Constitution. *West Jefferson* v. *Robinson* (1965), 1 Ohio St. 2d 113, paragraph three of the syllabus. The next question is whether there is a "conflict" between general laws (R. C. Chapters 3781 and 3791) and the Eastlake building ordinances. Under the following well accepted legal principles and precedents we hold that there is such a "conflict."

In determining whether an ordinance is in "conflict" with general laws, the test is whether the ordinance permits or licenses that which the statute prohibits and vice versa. A city ordinance cannot forbid and prohibit what a statute permits and licenses. *State, ex rel. Cities Service,* v. *Orteca* (1980), 63 Ohio St. 2d 295, 299; *Lorain* v. *Tomasic* (1979), 59 Ohio St. 2d 1, 4; *Anderson* v. *Brown* (1968), 13 Ohio St. 2d 53, 58; *Auxter* v. *Toledo* (1962), 173 Ohio St. 444, 447; *State, ex rel. McElroy,* v. *Akron* (1962), 173 Ohio St. 189; *Struthers* v. *Sokol* (1923), 108 Ohio St. 263, paragraph two of the syllabus.

As expressed in R. C. Chapters 3781 and 3791, the state has manifested a statewide concern for uniformity in building industrialized units. When the state by comprehensive statutory plan has imposed regulations statewide where there is a genuine statewide concern for uniformity in building industrialized units, any ordinance which differs from the statutes by imposing more restrictive requirements is in "conflict" therewith and is *ipso facto* invalid. *State, ex rel. Klapp*, v. *Dayton P. & L. Co.* (1967), 10 Ohio St. 2d 14; *State, ex rel. Arey*, v. *Sherrill* (1944), 142 Ohio St. 574; *Cleveland Tel. Co.* v. *Cleveland* (1918), 98 Ohio St. 358.

Accordingly, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., P. BROWN and SWEENEY, JJ., concur.

HOLMES, J., concurs in the judgment.

W. BROWN and LOCHER, JJ., dissent.

HOLMES, J., concurring. I must concur in the judgment in that, as stated by the majority, the General Assembly has made a legislative policy decision in favor of statewide uniformity in the building of these so-called industrialized units. R. C. Chapters 3781 and 3791 are general laws by nature, and local laws in conflict therewith must give way.

Being strongly in support of home rule powers of municipalities in the exercise of their police powers, granted by Section 3, Article XVIII of the Ohio Constitution, I would have entertained serious doubt as to such legislative intrusion upon local authority, had I been in a legislative capacity. However, I must judicially review these sections in light of the constitutional provisions, and conclude that the state was within its power in enacting such general laws.

WILLIAM B. BROWN, J., dissenting. R. C. 3781.10(A) provides that rules formulated and adopted by the Ohio Board of Building Standards "***shall be the lawful *minimum* requirements specified for such buildings *or industrialized units***." (Emphasis added.) R. C. 3781.10 makes it plain to me the General Assembly could not have intended for the Ohio

Basic Building Code (OBBC) to supersede any municipal ordinance which imposes more restrictive standards of construction. This view is reflected in the OBBC itself, which defines "Conflict with OBBC" as "***legislation, or a rule, or a condition which is at variance with OBBC to the extent or in a manner that such legislation, rule, or condition permits or constitutes a provision for safety or sanitation which would be, or is *less safe or sanitary* than is required under OBBC." (Emphasis added.) Ohio Adm. Code 4101:2-1-02.

LOCHER, J., dissenting. At the threshold of our concern herein is the ultimate question of whether there is a "conflict" between the statute and ordinance. More narrowly framed for our consideration herein, the issue is whether a statute regulating over a certain matter automatically preempts and overrides a municipality from regulating on the same subject matter.

The answer is unequivocally "no."

An ordinance is not *ipso facto* invalid if it regulates the same subject matter as does a statute, if there is not a "head-on collision" between the legislative enactments. An ordinance which imposes more restrictive requirements than does a statute is not in conflict and thereby can and should be upheld as co-extensive with the necessities and safeguards of the public interest.

The majority properly recites the time-tested rule espoused in *Struthers* v. *Sokol* (1923), 108 Ohio St. 263, for determining whether a "conflict" does exist,[4] but then, upon the strength of *State, ex rel. Klapp,* v. *Dayton P. & L. Co.* (1967), 10 Ohio St. 2d 14, assumes that a more restrictive ordinance *ipso facto* constitutes a "conflict."

Initially, a review of *Sokol, supra,* is not only interesting but also illuminating. *Sokol's* rationale and eventual determination do not parallel the majority's rationale herein.

In *Sokol,* certain city ordinances made some acts crimes that were not crimes by statute, and, in one instance, the ordi-

---

[4] Paragraph two of the syllabus in *Sokol, supra,* reads as follows:

"In determining whether an ordinance is in 'conflict' with general laws, the test is whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa."

nance imposed a greater penalty than that imposed by the statute concerning the same offense.

The court found no technical conflict and upheld the ordinances, even though the ordinances regulated the same subject matter, and even, in one instance, imposed a more stringent penalty than its statutory counterpart.[5]

The majority's reliance on *Klapp; State, ex rel. Arey,* v. *Sherrill* (1944), 142 Ohio St. 574; and *Cleveland Tel. Co.* v. *Cleveland* (1918), 98 Ohio St. 358, for the assertion that "any ordinance which differs from***statutes***imposing more restrictive requirements is in 'conflict' therewith and is *ipso facto* invalid" is a misapplication of the law.

In the above-cited cases, a "conflict," commonly referred to as a "head-on collision," between the city and state legislative enactments concerning general laws was clearly established, invalidating the ordinance thereby. There is no mention in these cases that a more restrictive requirement imposed by ordinance is invalid if a statute also legislates over that same subject matter. The majority is reading too much into those cases which, in my opinion, are already questionable in their result.[6]

An ordinance can be in conflict with a statute if it is not strictly local in nature or, more importantly, to our consideration herein, if the ordinance is more restrictive than the statute. The grant of home rule powers by virtue of Section 3,

[5] Paragraph three of the syllabus in *Sokol, supra,* reads as follows:

"A police ordinance is not in conflict with a general law upon the same subject merely because certain specific acts are declared unlawful by the ordinance, which acts are not referred to in the general law, or because certain specific acts are omitted in the ordinance but referred to in the general law, or because different penalties are provided for the same acts, even though greater penalties are imposed by the municipal ordinance."

[6] A vital and integral component of the Ohio constitutional amendments of 1912 were the home rule powers. In the era immediately following 1912, Judge Wanamaker wrote long and vigorous opinions concerning the ramifications of the recently enacted home rule powers.

Unfortunately, his sound reasoning and logical approach in the area of home rule were not always adhered to by a majority of the court. It is my understanding and belief that had his interpretation and rationale been followed more often, we would not find ourselves vacillating on the scope of home rule powers. Judge Wanamaker's dissenting opinion in *Cleveland Tel. Co.* v. *Cleveland, supra,* at pages 387-428, most clearly illuminates my understanding of home rule powers.

Article XVIII of the Ohio Constitution allows the imposition of stricter regulations and should not be held *ipso facto* invalid merely when the ordinance and statute legislate over the same subject matter. In order to obviate an ordinance which regulates over the same subject matter as does a statute, a "head-on collision" must be found. See: *United States Fidelity & Guaranty Co.* v. *Guenther* (1930), 281 U.S. 34; *Heidle* v. *Baldwin* (1928), 118 Ohio St. 375; *Matthews* v. *Russell* (1949), 87 Ohio App. 443; *Coshocton* v. *Saba* (1936), 55 Ohio App. 40; *Leipsic* v. *Folk* (1931), 38 Ohio App. 177; *Columbus* v. *Geren* (1923), 1 Ohio Law Abs. 534; *State, ex rel. Haley,* v. *Troutdale* (1978), 281 Ore. 203, 576 P. 2d 1238; Accord, 14 Western Reserve L. Rev. 786, at page 793; and 29 Ohio St. L. J. 29, at page 38.

In 3 Ohio Northern L. Rev., the author gives a learned opinion as to the issue at bar. At pages 680 and 681, he aptly comments:

"* * *[A]bsent denial by the state legislature, the [constitutional] committee had intended that municipal regulations which were more strict than those of the state would be valid, but not those which were less severe. This explanation was repeated often enough, gained sufficient adherents, and was varied enough in its phrasing that little doubt could remain that the convention thoroughly understood at least what 'conflict' was intended to mean. A municipality could go 'further' than state regulations, but not 'fall short' of them. A municipality could 'add' to state regulations, but it could not 'lessen' state power or 'destroy' or 'weaken' a statute or 'breakdown' a general law. A municipality could make a state regulation 'stronger' but not 'weaker.' "

To further buttress my opinion that no conflict does exist merely upon municipal legislation in the same area, analysis of the Ohio Board of Building Codes (OBBC) is necessary to determine the scope of a "conflict." Ohio Adm. Code 4101:2-1-02 defines "Conflict with OBBC" as:

"* * *[L]egislation, or a rule, or a condition which is at variance with OBBC to the extent or in a manner that such legislation, rule, or condition permits or constitutes a provision for safety or sanitation *which would be, or is less safe or sanitary than is required under OBBC."* (Emphasis added.)

The majority opinion readily admits that R. C. Chapter 3781, in several sections, provides that the safety standards therein are the lawful minimum for public building and industrialized units.[7]

Had the General Assembly intended to totally preempt and thereby proscribe a statewide concern for the use of the industrialized units at issue here it should have utilized an express statutory prohibition against any other measures. *Cleveland* v. *Raffa* (1968), 13 Ohio St. 2d 112, and *Columbus Legal Amusement Assn.* v. *Columbus* (1947), 50 Ohio Law Abs. 353, 358. Instead, the General Assembly merely set forth minimum safety requirements which other political subdivisions could adopt or make more stringent.

R. C. 3781.01, in fact, expressly states that additional regulation by a municipal corporation in this area is permissible. In pertinent part, it reads:

"Chapters 3781 and 3791 of the Revised Code do not prevent the legislative authority of a municipal corporation from *making further and additional* regulations, not in conflict with such chapters or with the rules and regulations of the board of building standards." (Emphasis added.)

Therefore, I would reverse the judgment of the Court of Appeals, in that the statute and state building code at issue prescribe only the lawful minimum standards and that there was no intent to preempt local regulations which impose more stringent safety requirements.

[7] See R. C. 3781.10(A) which provides that regulations formulated and adopted by the Ohio Board of Building Standards "shall be the *lawful minimum* requirements for***industrialized units."