CLIPSON et al., Appellees,

v.

OHIO DEPARTMENT OF INDUSTRIAL RELATIONS,
BOARD OF BUILDING STANDARDS, Appellant.

[Cite as *Clipson v. Ohio Dept. of Indus. Relations,
Bd. of Bldg. Stds.* (1990), 69 Ohio App.3d 746.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–11.

Decided Oct. 11, 1990.

*Louis F. Lausche,* for appellees.

*Anthony J. Celebrezze, Jr.,* Attorney General, and *Angela G. Phelps–White,* for appellant.

BOWMAN, Judge.

Appellee, Addison Clipson, has been the Buildings Plan Examiner for the village of Woodlawn since 1978 and, as such, holds Class I (Building Officer), Class II (Plans Examiner), and Class III (Building Inspector) certifications issued by the state of Ohio. In 1988, Charles F. Ware ("Ware"), President of Queen City Builders, submitted plans to the Woodlawn Building Department for a permit to construct a warehouse with approximately seventy-eight hundred square feet. In response, Clipson notified Ware on June 22, 1988, that the plans could not be processed unless the sprinkler permit had been issued in accordance with the provisions of village of Woodlawn Code, Section 1464.09.[1] The ordinance required buildings with more than seventy-five hundred square feet to have a sprinkler system. After repeated attempts to contact Clipson at the municipal building, as well as Clipson's private office, to resolve any difficulties, Ware eventually submitted plans for a building of six thousand eight hundred square feet, which were subsequently approved. On August 8, 1988, Ware filed a complaint with the Board of Building Standards ("board") alleging Clipson violated the Ohio Basic Building Code ("Code") by failing to have regular business hours and making himself available to the public and by enforcing a local ordinance that conflicted with the Code.

After properly serving Clipson with notice, pursuant to R.C. Chapter 119, the board conducted a hearing at which Clipson appeared and presented his case, although he was not represented by counsel. The board voted to revoke Clipson's Class I, II and III certifications for a violation of Ohio Adm.Code

1. This provision was repealed by the Woodlawn Council on April 11, 1989.

4101:2–1–45(L) and for enforcing provisions of a local ordinance which conflicted with the Code. The board's order specifically stated:

"ORDER OF THE BOARD OF BUILDING STANDARDS

"The Board of Building Standards of the Ohio Department of Industrial Relations on this 28th day of October, 1988, made the following order:

"It is ordered that the Class I, II, and III certifications of Mr. Addison Clipson be revoked because he refused to schedule a meeting with Mr. Charles F. Ware as required by rule 4101:2–1–45(L) of the Administrative Code and because Mr. Clipson enforced provisions of local ordinances which directly conflicted with rules of the Board of Building Standards which he is certified to enforce, and causing violations of Sections 4101:2–1–83(A)(3), 4101:2–1–49(A), 4101:2–1–23(A), and 4101:2–17–02, Ohio Administrative Code."

Clipson appealed to the Franklin County Court of Common Pleas, which reversed the decision of the board on the basis that the board's order was not supported by reliable, probative and substantial evidence, and was not in accordance with law. Specifically, the trial court found that one instance where Clipson was not available at his office did not support revoking Clipson's certification and that the testimony of Ware was not reliable and was of little probative value. Further, the trial court found that there was no conflict between Woodlawn's ordinance and the Code, because no court had found such a conflict to exist.

Appellant sets forth the following assignments of error:

"I. The trial court erred in reversing the order of the Board of Building Standards when that order was a proper exercise of the Board's authority and is supported by reliable, probative and substantial evidence.

"A. The Board of Building Standards properly revoked Appellee's Class I, II and III certifications.

"B. The order of the Board of Building Standards is supported by reliable, probative and substantial evidence and is in accordance with law.

"II. The trial court erred in its decision that the concepts of due process were violated."

Appellant's assignments of error are related and will be addressed together.

In determining whether the board's order was supported by the requisite quantum of evidence, a trial court must, to a limited extent, weigh the evidence. In *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 67, 407 N.E.2d 1265, 1267–1268, the court stated:

"In undertaking this hybrid form of review, the Court of Common Pleas must give due deference to the administrative resolution of evidentiary

conflicts. For example, when the evidence before the court consists of conflicting testimony of approximately equal weight, the court should defer to the determination of the administrative body, which, as the factfinder, had the opportunity to observe the demeanor of the witnesses and weigh their credibility. However, the findings of the agency are by no means conclusive.

"Where the court, in its appraisal of the evidence, determines that there exist legally significant reasons for discrediting certain evidence relied upon by the administrative body, and necessary to its determination, the court may reverse, vacate or modify the administrative order. Thus, where a witness' testimony is internally inconsistent, or is impeached by evidence of a prior inconsistent statement, the court may properly decide that such testimony should be given no weight. Likewise, where it appears that the administrative determination rests upon inferences improperly drawn from the evidence adduced, the court may reverse the administrative order."

In reviewing a decision of the court of common pleas, this court must determine whether it abused its discretion. *Kinney v. Dept. of Admin. Services* (1984), 14 Ohio App.3d 33, 14 OBR 37, 469 N.E.2d 1007.

The board is authorized, pursuant to R.C. 3781.10(E), to certify a municipal building department to exercise enforcement authority, accept an approved plan, and to make inspections. This provision also authorizes the board to certify personnel of municipal building departments to exercise these duties and states:

"The board also shall certify personnel of municipal, township, and county building departments, and persons and employees of persons, firms, or corporations as described in divisions (E)(1) and (2) of this section, to exercise enforcement authority, to accept and approve plans and specifications, and to make inspections, pursuant to sections 3781.03 and 3791.04 of the Revised Code. The board shall specify, in rules adopted pursuant to Chapter 119. of the Revised Code, the requirements that shall be satisfied for certification purposes, which requirements shall be consistent with this division. * * * "

Pursuant to this authority, the board adopted Ohio Adm.Code 4101:2-1-45(K) and (L), which provide:

"(K) The building department shall have an office conveniently located within the area it serves. The office shall be open and staffed to serve the public need and office hours shall be conspicuously posted;

"(L) All inspectors shall be available at such time mutually agreed upon by both the department and the owner or his representative * * *[.]"

R.C. 3781.10 and Ohio Adm.Code 4101:2-1-83 authorize the board to suspend or revoke certifications.

■ As the holder of a Class I certification, Clipson was designated as a building officer with responsibility for overall administration of a certified building inspection department and, as a holder of a Class III certificate, Clipson was a building inspector subject to Ohio Adm.Code 4101:2–1–45(L). A Class III building inspector is defined in Ohio Adm.Code 4101:2–1–78(A)(3) as follows:

"Class III certificate of competency qualifies a person to be designated as a building inspector with the responsibility for the inspection of building construction to determine compliance with the approved plans."

The building department of the village of Woodlawn is located in the village municipal building with hours from 8 a.m. to 4:30 p.m.; however, inasmuch as Clipson was not a village employee, but was an architect with his own office, he usually stopped at the municipal building only around noon each day. Upon receiving Clipson's letter of August 1988, stating the proposed building could not be processed until the plans complied with the local ordinance, Ware visited and telephoned the building inspection office and visited and telephoned Clipson's place of business. On August 1, 1988, Clipson specifically instructed Ware, in writing, not to come to his place of business and further stated:

"One of our contracts is with the Village of Woodlawn to provide services in regard to enforcement of the OBBC and the Zoning Ordinance. All of such business is scheduled by and routed through the Municipal Clerk, not my firm's office. I request that you discontinue calling our office in regard to projects of interest to the Building Commissioner. You will find the Municipal Clerk prompt and efficient."

While not a model of clarity, a reasonable interpretation of Clipson's letter to Ware, along with the testimony before the board, was a request to route business requests through the municipal clerk, including requests for appointments. While Ware's testimony was replete with references to unanswered phone calls, Clipson also testified that he attempted to return some of the calls but was unable to reach Ware. There was no evidence from which it could be found or even inferred that Ware specifically requested, or Clipson specifically refused, to meet with Ware. Rather, the evidence supports a finding of missed communications.

■ Further, as defined in Ohio Adm.Code 4101:2–1–78(A)(3), *supra*, as a holder of a Class III building inspector certificate, Clipson was responsible for the inspection of building *construction* to determine compliance with approved plans. At the time Ware filed a complaint with the board, building construction had not commenced and Clipson was not yet acting in his capacity as a building inspector. Hence, Ohio Adm.Code 4101:2–1–45(L) is not

applicable to the facts presented here and the trial court did not abuse its discretion in finding the board's order was not supported by reliable, probative and substantial evidence.

The board also found that Clipson had enforced a local ordinance that was in conflict with the Code. R.C. 3781.10 provides in part:

"The board of building standards shall:

"(A) Formulate and adopt rules governing the erection, construction, repair, alteration, and maintenance of all buildings or classes of buildings specified in section 3781.06 of the Revised Code, including land area incidental thereto, the construction of industrialized units, the installation of equipment, and the standards or requirements for materials to be used in connection therewith. The standards shall relate to the conservation of energy in and to the safety and sanitation of such buildings. *The rules shall be the lawful minimum requirements specified for such buildings* or industrialized units, except that no rule, except as provided in division (C) of section 3781.108 of the Revised Code, which specifies a higher requirement than is imposed by any section of the Revised Code shall be enforceable * * *." (Emphasis added.)

R.C. 3781.11(A)(1) provides:

"(A) The rules of the board of building standards shall:

"(1) Provide uniform minimum standards and requirements for construction and construction materials, including construction of industrialized units, to make buildings safe and sanitary as defined in section 3781.06 of the Revised Code[.]"

Pursuant to the above statutory authority, the board adopted Ohio Adm. Code 4101:2–17–02,[2] which provided in pertinent part:

"1002.1  Where required: Fired suppression systems shall be installed and maintained in full operating condition, as specified in this code, in the locations indicated in Sections 1002.2 through 1002.21.

"* * *

"1002.9  Use Groups M, S–1 and F–1: In all buildings or structures or portions thereof of Use Groups M, S–1 and F–1:

"1.  When more than 12,000 square feet (1116 m$^2$) in area * * *[.]"

The building proposed to be constructed by Ware fell within a S–1 use group and, as originally planned, had seventy-eight hundred square feet and

---

2. Ohio Adm.Code 4101:2–17–02 was repealed in January 1989 and these provisions are now set forth in Ohio Adm.Code 4101:2–10–02 and Article 10 of the Ohio Basic Building Code.

would not have required a fire suppression system based on the requirements of the state code.

R.C. 3781.01 authorizes municipal corporations also to adopt building regulations and provides:

"Chapters 3781. and 3791. of the Revised Code do not prevent the legislative authority of a municipal corporation from making further and additional regulations, not in conflict with such chapters or with the rules and regulations of the board of building standards. Such chapters or the rules and regulations of the board of building standards do not modify or repeal any portion of any building code adopted by a municipal corporation and in force on September 13, 1911, which is not in direct conflict with such chapters or with such rules and regulations."

The village of Woodlawn passed Ordinance No. 51–1986 enacting Chapter 1464, which provided in Section 1464.09 that warehouse buildings with more than seven thousand square feet had to have an automatic sprinkler system.

Section 3, Article XVIII, of the Ohio Constitution grants to municipalities the authority to " * * * exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws. * * * " R.C. 3781 and 3791 are general laws of the state. *Niehaus v. State, ex rel. Bd. of Edn.* (1924), 111 Ohio St. 47, 144 N.E. 433; *West Jefferson v. Robinson* (1965), 1 Ohio St.2d 113, 30 O.O.2d 474, 205 N.E.2d 382.

■ In determining whether an ordinance is in conflict with the general laws of the state, the test is whether the ordinance permits or licenses that which the statute prohibits and vice versa. *Struthers v. Sokol* (1923), 108 Ohio St. 263, 140 N.E. 519.

■ Here, since the statute provides the rules and regulations of the board are minimum standards and that a municipal corporation is authorized to adopt its own ordinance, no conflict exists under the facts of this case. A conflict would exist only if the village of Woodlawn ordinance permitted construction of a building in a S–1 category of more than twelve thousand square feet without a sprinkler system. To the extent appellant relies on *Eastlake v. Bd. of Bldg. Stds.* (1981), 66 Ohio St.2d 363, 20 O.O.3d 327, 422 N.E.2d 598, such reliance is misplaced. The issue in *Eastlake* was whether the city could enforce an ordinance which directly conflicted with a specific state statute. R.C. 3791.04 specifically provided that once industrialized units were approved by the state, no other approval was required and the particular industrialized unit could then be used anywhere in Ohio and, hence, the ordinance of the city of Eastlake which imposed further restrictions was in

conflict with a general law of the state. Thus, *Eastlake* is limited in its application to the specific facts at issue and does not apply, as appellant argues, to any variation between the Code and a local ordinance. Thus, the trial court was correct in its finding that no conflict existed.

To the extent the trial court found a denial of due process through the board's determination that a conflict existed between its rule and the local ordinance, the trial court was in error. An administrative agency has the authority to initially interpret and determine the validity of its rules.

For the foregoing reasons, appellant's assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

WHITESIDE and EVANS, JJ., concur.

JOHN R. EVANS, J., of the Third Appellate District, sitting by assignment.