OPINION
{¶ 1} Defendant-appellant, Martz Concrete Co., appeals a conviction in the Franklin Municipal Court for four violations of the Carlisle property maintenance code. We affirm appellant's conviction, but reverse and remand for sentencing.
 {¶ 2} Appellant has owned the property located at 350 East Central Avenue in Carlisle since 1929, using the property as a site for its concrete business. In 1997, the property was annexed into the city of Carlisle. Beginning in 1999, officials from the city of *Page 2 
Carlisle entered into discussions with appellant requesting that appellant rehabilitate the property. In the discussions, the Carlisle officials requested that appellant remove old equipment, unlicensed vehicles, trash and other debris from the property; secure buildings and silos that are in disrepair; and mow the grass and weeds that are overgrown on the property. However, no agreement was ever reached between appellant and the city.
 {¶ 3} In 2001, the Carlisle City Council adopted a property maintenance code for the municipality. On March 4, 2004, the Carlisle zoning official sent a letter to Dale Martz, the vice president of appellant, notifying him that the property was in violation of the maintenance code. The letter alleged six separate violations of the code citing that the structures on the property were in disrepair; miscellaneous trash, junk, equipment parts, building materials, tires, drums, and carnival ride parts had accumulated on the property; weed and plant growth was not maintained; unlicensed motor vehicles and inoperable construction equipment were being stored on the property; and a number of semi trailers in a state of disrepair had accumulated. The letter instructed appellant to correct the violations within 30 days and advised appellant of the right to appeal.
 {¶ 4} On January 31, 2006, Carlisle charged appellant with six violations of the property maintenance code and the case proceeded to a bench trial. On April 26, 2006, the trial court found appellant guilty of four violations, all minor misdemeanors. As punishment, the court assessed a fine of $50 per day commencing May 31, 2006 and continuing until appellant brings the property into compliance. Appellant timely appeals, raising four assignments of error. For convenience, we will address appellant's assignments of error out of order.
 {¶ 5} Assignment of Error No. 2:
 {¶ 6} "THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO DISMISS THE CASE." *Page 3 
 {¶ 7} Appellant argues in his second assignment of error that the trial court erred in denying his motion to dismiss. In support of his argument, appellant presents nine distinct issues for this court's consideration.
 {¶ 8} We begin our analysis by recognizing the well-settled presumption that municipal ordinances are presumed to be constitutional.Hudson v. Albrecht, Inc. (1984), 9 Ohio St.3d 69, 71.
 JURISDICTION {¶ 9} Appellant first challenges jurisdiction, arguing that the ordinance was not properly enacted. Appellant contends that pursuant to R.C. 731.231, Carlisle was required to file a copy of the ordinance in the Warren County Law Library for the ordinance to be properly enacted. Appellant argues that no copy was filed in the law library, the ordinance was not properly published and, due to the defective enactment, there is no jurisdiction.
 {¶ 10} Appellant relies on R.C. 731.231, which states in pertinent part, "The legislative authority of a municipality may adopt * * * any code prepared and promulgated by a public or private organization which publishes a model or standard code, including but not limited to codes and regulations pertaining to * * * building code * * * The publication required by sections 731.21 to 731.25 * * * shall state that a complete copy of such code is * * * on file in the law library of the county or counties in which the municipality is located and that said clerk has copies available for distribution to the public at cost."
 {¶ 11} Appellant also cites Tirpack v. Maro (1967), 9 Ohio App.2d 76. In Tirpack, the Seventh District Court of Appeals held that a noncharter municipality's zoning ordinance was invalid because the municipality failed to include a copy of the zoning map when the ordinance was published in violation of the publication provisions of the Ohio Revised Code. Id. at 82.
 {¶ 12} Appellant's reliance on R.C. 731.231 and Tirpack is misplaced. R.C. 701.05 *Page 4 
provides that "[m]unicipal corporations operating under a charter which provides for or authorizes a method of procedure in the passage and publication of legislation * * * differing from the method prescribed by general law, may pass and publish such legislation * * * under the general law or in accordance with the procedure provided for or authorized by its charter."
 {¶ 13} Carlisle is a municipality operating under a charter with procedures for the enactment and adoption of legislation. Section 5.06
of the charter states, "[t]he Council may adopt model or standard codes prepared and published by any public or private agency by reference to the date and source of the code without reproducing it at length in the ordinance or resolution. However, if the Council desires to modify, add to, or eliminate from any such code any section or part thereof, such addition, modification, or omission shall be clearly stated in the ordinance or resolution. In all such cases in which such a code shall be adopted by reference, publication of the code at length, by theMunicipality, shall not be required. However, at least one copy of all such codes, including all amendments thereto, shall be kept in theoffice of the Clerk of Council for consultation by interested persons during regular office hours and additional copies shall be for sale, when available, at cost, by the Clerk of Council." (Emphasis added.)
 {¶ 14} Due to its adoption of a charter, Carlisle need not follow the statutory procedures required of noncharter municipalities to pass and publish legislation, including the "law library publication" provision in R.C. 731.231. Carlisle's charter provides for an alternate publication requirement,[1] and appellant has provided no evidence that this procedure was not followed. Due to the presumption that municipal ordinances are constitutional, we find there is jurisdiction. *Page 5 
 MENS REA {¶ 15} Appellant next argues the complaints in this case were defective because no mens rea for violating the property maintenance code was alleged. Additionally, appellant claims that the applicable mens rea for the code is "recklessness," relying on R.C. 2901.21(C).
 {¶ 16} R.C. 2901.21(C) provides, "[w]hen the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense."
 {¶ 17} "The legislature, in enacting laws in furtherance of the public health, safety and welfare, may impose strict liability for certain conduct, excluding from the statutory language elements of scienter or guilty knowledge." State v. Borges (1983), 10 Ohio App.3d 158, 159-160, citing United States v. Balint (1922), 258 U.S. 250.
 {¶ 18} Appellant's argument is unpersuasive. A reading of the property maintenance code in this case plainly indicates that the intended mental state for each violation is strict liability. See City of MayfieldHeights v. Barry, Cuyahoga App. No. 82129, 2003-Ohio-4065.[2] Property maintenance promotes the public health, safety and general welfare of the community because it advances the appearance of property in the community, protects real estate from impairment and destruction of value, and encourages economic and community development. Village ofHudson v. Albrecht, Inc. (1984), 9 Ohio St.3d 69. We find that the code in this case is strict liability and Carlisle was not required to allege a mens rea in the *Page 6 
complaint nor prove a mens rea of "recklessness.
 PREEXISTING CONDITION/USE {¶ 19} Appellant cites the fact that the use and condition of the property preexisted annexation into Carlisle and the enactment of the maintenance code. As a result, appellant argues the code cannot regulate preexisting use and condition of the property. Appellant argues the city's regulation of the preexisting use violates the Takings Clause of the United States Constitution.
 {¶ 20} To support this proposition, appellant cites R.C. 713.15, which provides that "The lawful use of any dwelling, building, or structure and of any land or premises, as existing and lawful at the time of enacting a zoning ordinance or an amendment to the ordinance, may be continued, although such use does not conform with the provisions of such ordinance or amendment * * *."
 {¶ 21} Appellant also relies on City of Akron v. Chapman (1953),160 Ohio St. 388, and its progeny. In Chapman, the defendant was cited for violation of a zoning ordinance for running a junkyard business, which preexisted the ordinance. Id. at 383. In Chapman, the Ohio Supreme Court held that the enforcement of the zoning ordinance against the preexisting, nonconforming use as a junkyard constituted an unconstitutional taking. Id. at paragraph 3 of the syllabus.
 {¶ 22} However the Ohio Supreme Court has held a municipality may abate preexisting, nonconforming uses of property if it constitutes a nuisance. Northern Ohio Sign Contractors Association v. City ofLakewood (1987), 32 Ohio St.3d 316, 320, citing, C.D.S., Inc. v. GatesMills (1986), 26 Ohio St.3d 166. Where the existence of a danger to the public health, safety, morals or public welfare, has been demonstrated or a declaration of nuisance sufficient to support the exercise of the police power, a municipality may abate a preexisting, nonconforming use. Id. *Page 7 
 {¶ 23} Clearly, Carlisle's purpose in enacting the property maintenance code was to abate and prevent dangerous conditions on properties.[3] The maintenance code also seeks to abate nuisances within the municipality. Further, the Ohio Supreme Court has recognized that regulations for aesthetic concerns, coupled with a concern for the protection of property values and impairment, are a valid exercise of the municipal police power. Village of Hudson v. Albrecht, Inc. (1984),9 Ohio St.3d 69, 73. This code was also enacted, as appellee mentions, for aesthetic concerns and to "prevent problems that negatively effect neighborhoods within the municipality and create a more livable community for the citizens."
 {¶ 24} We also note that Carlisle is not depriving appellant's use of the property as a gravel pit or concrete business. Rather, Carlisle only seeks for appellant to clean up the property and remove the unsightly conditions on the property. The ordinance is a valid exercise of the police power to abate preexisting conditions and promote the health, safety and general welfare within the city
 PREEMPTION {¶ 25} Appellant argues that the Carlisle property maintenance code imposes more stringent standards and, as a result, conflicts with the Ohio Building Code in violation of Ohio law. Appellant contends that the Ohio Building Code preempts Carlisle from enacting the property maintenance code.
 {¶ 26} State laws only preempt local laws to the extent that that are utterly inconsistent *Page 8 
with local law, or when the legislature has expressed a clear intention to override local law. Ohio Assn. of Private Detective Agencies, Inc. v.North Olmsted, 65 Ohio St.3d 242, 244, 1992-Ohio-65.
 {¶ 27} R.C. 3781.10(A)(2) provides, "[t]he rules governing nonresidential buildings are the lawful minimum requirements specified for those buildings and industrialized units, except that no rule other than as provided in division (C) of section 3781.108 of the Revised Code that specifies a higher requirement than is imposed by any section of the Revised Code is enforceable." (Emphasis added.)
 {¶ 28} Further, R.C. 3781.01(A) states, "[c]hapters 3781. and 3791. of the Revised Code do not prevent the legislative authority of a municipal corporation from making further and additional regulations, not in conflict with those chapters or with the rules the board of building standards adopts."
 {¶ 29} The Ohio Revised Code clearly states that the Ohio Building Code sets forth only the minimum standards for building regulations and explicitly authorizes local municipalities to impose higher maintenance specifications.
 {¶ 30} Appellant contends, though, that because R.C. 3781.10(A)(2) states that "except that no rule other than as provided in division (C) of section 3781.108 of the Revised Code that specifies a higher requirement than is imposed by any section of the Revised Code is enforceable," Carlisle's property maintenance ordinance is not authorized to enact higher standards.
 {¶ 31} Clearly, the Revised Code authorizes municipalities to make additional or more stringent regulations to the Ohio building standards as long as there is no conflict. See Clipson v. Ohio Dept. of Indus.Relations, Bd. of Bldg. Stds. (1990), 69 Ohio App.3d 746.[4] In *Page 9 
determining whether an ordinance is in conflict with the general laws of the state, the test is whether the ordinance permits or licenses that which the statute prohibits and vice versa. Struthers v.So/co/(1923), 108 Ohio St. 263, 269.
 {¶ 32} In the case at bar, appellant cites no provision from the municipal property maintenance code which is in conflict with the Ohio building standards. Rather, appellant simply argues that since the standards are more stringent, a conflict exists. However, the Revised Code clearly authorizes municipalities to make greater requirements than the minimum standards. Further, since the Revised Code states that the rules and regulations are minimum standards and that a municipal corporation is authorized to adopt its own ordinance, no conflict exists under the facts of this case. None of the property maintenance provisions are "utterly inconsistent" with the Ohio Building Code nor has the legislature clearly expressed an intention to override local law. In fact, the legislature has clearly expressed that local laws may make further and additional regulations
 VAGUENESS {¶ 33} Appellant argues the property maintenance code is void for vagueness because enforcement is dependent upon the subjective interpretation of the city inspectors. Additionally, appellant claims that the ordinance on its face, and as applied in this case, allows the inspectors to enforce it on an ad hoc basis.
 {¶ 34} With respect to the "void for vagueness" doctrine, to pass constitutional scrutiny, an ordinance must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly," as well as "provide explicit standards" to the individuals enforcing or applying them. Grayned v. Rockford (1972),408 U.S. 104, 108-109. It does not, however, require "statutes to be drafted with scientific *Page 10 
precision. Nor does the doctrine require that every detail regarding the procedural enforcement of a statute be contained therein. Instead, it permits a statute's certainty to be ascertained by application of commonly accepted tools of judicial construction, with courts indulging every reasonable interpretation in favor of finding the statute constitutional." Perez v. Cleveland, 78 Ohio St.3d 376, 378-379,1997-Ohio-33.
 {¶ 35} When analyzing a statute under the void for vagueness doctrine, a three-part analysis must be applied. State v. Collier (1991),62 Ohio St.3d 267, 269. First, the wording of the statute must provide fair warning to the ordinary citizen so that citizens may conform their behavior to the requirements of the statute. Id. at 270. Second, the wording of the statute must preclude arbitrary, capricious and discriminatory enforcement. Id. Finally, the wording of the statute should not unreasonably impinge or inhibit fundamental constitutionally protected freedoms. Id.
 {¶ 36} Appellant's argument is unpersuasive. A reading of the ordinance demonstrates that it is not void for vagueness. Each provision of the ordinance notifies ordinary citizens what is prohibited.[5]
Further, these standards and definitions are sufficient to prevent inspectors from enforcing the provisions in an arbitrary, capricious or discriminatory manner. Finally, as we will discuss later in this opinion, the ordinance does not impinge on *Page 11 
 {¶ 37} appellant's constitutional rights.
 EQUAL PROTECTION {¶ 38} Appellant argues that the property maintenance code violates equal protection because it creates nonuniform standards within the state of Ohio for the maintenance of real property.
 {¶ 39} "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall `deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City ofCleburne v. Cleburne Living Center (1985), 473 U.S. 432, 439. The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. Id. at 440. The general rule gives way to a higher level of scrutiny when the legislation creates a classification involving a fundamental right, suspect class[6] or quasi-suspect class.[7] Id.
 {¶ 40} In this case, appellant claims the ordinance is unconstitutional because it creates different property maintenance standards for Carlisle landowners as opposed to landowners in other Ohio municipalities. Such a classification is a nonsuspect class, subject only to rational basis scrutiny.
 {¶ 41} The standard of analysis under the rationally related test is deferential. Pennell v. City of San Jose (1988), 485 U.S. 1, 14. Only if the Court can find no set of facts which could possibly support the distinction drawn by the state will it overturn state action.McGowan v. Maryland (1961), 366 U.S. 420, 426. "Further, the state need not prove that such a rational relationship exists; rather, the plaintiff must demonstrate that it is impossible *Page 12 
for the state to show any reasonable basis for its action."Operation Badlaw, Inc. v. Licking County General Health Dist. Bd. ofHealth (S.D.Ohio 1992), 866 F.Supp. 1059, 1064, citing, Zielasko v.State of Ohio (C.A.6, 1989), 873 F.2d 957. "In applying the rational basis test, the burden falls upon the party challenging the state enactment to convince the court that its basis is irrational and not upon the state. If it is evident that the question is at least debatable, the attack must fail. Furthermore, the court need not determine what particular reasoning was actually used to justify the enactment, and may even hypothesize as to any possible legitimate state objectives which are promoted by the enactment." Id.
 {¶ 42} In briefing this issue, appellant advances no factual analysis or legal support to explain how the ordinance violates equal protection, rather appellant simply claims that it violates equal protection because it creates nonuniform standards. Additionally, there was no evidence presented to the trial court to demonstrate how the ordinance violates equal protection. Due to the appellant's failure to meet the burden of proof, appellant's argument must fail.
 PROCEDURAL DUE PROCESS {¶ 43} Appellant argues the city of Carlisle failed to comply with its procedures under the code and, as a result, violated procedural due process.
 {¶ 44} Due process requires that an individual be given notice and an opportunity to be heard before being deprived of a significant property interest. State v. Hayden, 96 Ohio St.3d 211, 2002-Ohio-4169, ¶ 6.
 {¶ 45} The record in this case demonstrates that appellant received proper notice. On March 4, 2004, the city of Carlisle sent written notice informing appellant that the property was not in compliance with the property maintenance code. The letter specified the exact sections of the code that were violated and listed specific violations on appellant's property. The letter also provided 30 days for appellant to correct the violations and notified appellant *Page 13 
of his right to appeal as required by the ordinance. Further, discussions between appellant and the city about cleaning up the property were ongoing since 1999 and appellant has been on notice of the specific areas of disrepair since that time. We find no due process violation on these facts.
 TAKING {¶ 46} Appellant argues the property maintenance code constitutes an unconstitutional taking because it deprives appellant of the use and enjoyment of the property.
 {¶ 47} The United States and Ohio Constitutions guarantee that private property shall not be taken for public use without just compensation.Fifth and Fourteenth Amendments to the United States Constitution; Section 19, Article I, Ohio Constitution.
 {¶ 48} In Goldberg Cos., Inc. v. Richmond Hts. City Council,81 Ohio St.3d 207, 1998-Ohio-456, the Ohio Supreme Court adopted the United States Supreme Court's land-use regulation test from Agins v.Tiburon (1980), 447 U.S. 255. The Agins takings analysis provides that, "application of land-use regulations to a particular piece of property is a taking only `if the ordinance does not substantially advance legitimate state interests * * * or denies an owner economically viable use of his land.'" Goldberg, 81 Ohio St.3d at 211.
 {¶ 49} Further, the Ohio Supreme Court held that the Agins test is disjunctive and a taking can be shown by proving either prong. State exrel. Shemo v. Mayfield Hts., 95 Ohio St.3d 59, 63, 2002-Ohio-1627, modified on reconsideration of other grounds, 96 Ohio St.3d 379,2002-Ohio-4905.
 {¶ 50} However, in Lingle v. Chevron U.S.A., Inc. (2005),544 U.S. 528, the United States Supreme Court overturned Agins, holding that the "substantially advance[s]" standard is not an appropriate test for determining whether a regulation effects a taking. Id. at 528. Instead, the court ruled that regulatory takings challenges are to be examined on a case by case basis using the factors set forth in Penn Central Transp.Co. v. New York City (1978), *Page 14 438 U.S. 104. Lingle, 544 U.S. at 538.
 {¶ 51} The Penn Central factors include: the expectations of the property owner;[8] the degree to which the regulation is designed to stop uses that cause substantial individualized harm, but are not common law nuisances; the degree to which the regulation enables the government to actually use the property for uniquely public functions; and the nature of the governmental interaction, i.e., whether it is a "physical invasion by the government" as compared to "when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." Penn Central, 438 U.S. at 124-128.
 {¶ 52} We recognize, though, that the Ohio Supreme Court recently cited Goldberg in Jaylin Investments, Inc. v. Moreland Hills,107 Ohio St.3d 339, 2006-Ohio-4, ¶ 19, following the Lingle decision, holding that the court of appeals in that case was correct in its application of the Goldberg/Agins test. Id. at ¶ 22. Consequently, for this appeal, we presume that the Ohio Supreme Court continues to adhere to theAgins "substantially advance[s]" test for analyzing land-use regulations.
 {¶ 53} Upon reviewing the case at bar, regardless of whether we apply the Penn Central or the Goldberg/Agins test, we find that the Carlisle ordinance does not constitute a taking. When examining the ordinance under the Agins "substantially advance[s]" test, having already demonstrated that the ordinance promotes a legitimate state interest, the ordinance also substantially advances that interest. The ordinance in this case is a comprehensive property maintenance scheme that addresses Carlisle's desire to have properly maintained property within the city limits and ensure that structures are safe, sanitary, and fit for occupation and use. Further, the code promotes aesthetics within the municipality and protects property values. *Page 15 
 {¶ 54} In examining this case in light of the Penn Central factors, the ordinance also does not constitute a taking. The nature of the regulation is not a physical invasion of the appellant's property. Also, in looking at the interference with the property owner's investment-backed expectations, the property code does not affect appellant's ability to use the property as a concrete business or gravel pit. Rather, the code requires appellant to maintain the property in a safe, sanitary and fit condition. In addition, requiring appellant to remove unlicensed vehicles, mow grasses and weeds, and rehabilitate or remove debilitated structures does not affect appellant's business enterprise.
 SUBSTANTIVE DUE PROCESS {¶ 55} Finally, appellant argues that the property maintenance code is a violation of substantive due process because the ordinance is not rationally related to any legitimate government purpose. Appellant claims the ordinance fails the level of scrutiny for zoning regulations articulated in Village of Euclid v. Amber Realty Co. (1926),272 U.S. 365, by arguing that it is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare."
 {¶ 56} Further, appellant claims that "[n]o one (so far) has in this case articulated any reason how it protects the health, safety, or welfare, of any person, to regulate unspecified degrees of `disrepair' or `unsightliness,' what a structure looks like, when it does not affect the performance or safety of the structure * * *."
 {¶ 57} Having already identified the legitimate reasons for land-use regulations like the property maintenance code in this case and their relation to the health, safety, and welfare, we are not persuaded by appellant's argument.
 {¶ 58} Appellant's second assignment of error is overruled.
 {¶ 59} Assignment of Error No. 1:
 {¶ 60} "THE TRIAL COURT ERRED IN NOT ADMITTING DEFENDANT'S *Page 16 
EVIDENCE."
 {¶ 61} In his first assignment of error, appellant contends that the trial court erred by not admitting several items of evidence into the record including a copy of the ordinance, documentation of the property's annexation into the city of Carlisle, and testimony showing that a copy of the ordinance was not in the law library. Appellant argues that this evidence should have been admitted because it was relevant to the cause of action.
 {¶ 62} The admission or exclusion of evidence rests in the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173,180. An appellate court will not interfere with a trial court's evidentiary ruling absent an abuse of discretion. State v. Williams
(1982), 7 Ohio App.3d 160, paragraph one of the syllabus. Abuse of discretion connotes more than an error of law or judgment and implies that the trial court's decision was arbitrary, unreasonable or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 63} The general rule of admissibility is that all relevant evidence is admissible while evidence which is not relevant is not admissible. Evid.R. 402. "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401.
 {¶ 64} Appellant first claims the trial court erred by refusing to admit a copy of the ordinance at issue in this case to show that the ordinance was not properly enacted. A review of the transcript, though, reveals that appellant's argument fails because the trial judge took judicial notice of the ordinance during trial.
 {¶ 65} Second, appellant argues the trial court erred by refusing to admit documentation of the property's annexation to show the preexisting use. The trial court did not err by refusing to admit the document. First, the record clearly indicates, even without the document, that the property was annexed in 1997. Second, as examined above, regardless *Page 17 
of whether the conditions on the property existed before annexation, the city may still abate the nonconforming use, even if it was preexisting.
 {¶ 66} Appellant claims the trial court erred by not admitting testimony of the Warren County law librarian to show the ordinance was not published in compliance with R.C. 731.231. At trial, appellant proffered the testimony of the Warren County law librarian, who testified that no copy of the ordinance was on file at the library. As discussed above, because Carlisle is a charter municipality with its own procedure for enactment and publication of ordinances, it is not required to follow the mandates of R.C. 731.231, requiring a copy of the ordinance to be on file in a law library. As a result, the trial court did not err in refusing to admit this testimony because the evidence is not relevant to the instant matter.
 {¶ 67} Appellant's first assignment of error is overruled.
 {¶ 68} Assignment of Error No. 3:
 {¶ 69} "THE TRIAL COURT ERRED IN CONVICTING THE APPELLANT OF VIOLATING THE CARLISLE PROPERTY MAINTENANCE CODE."
 {¶ 70} Appellant argues in his third assignment of error that his convictions not supported by sufficient evidence and were also against the manifest weight of the evidence. Specifically, appellant argues no evidence was presented that the trailers were in disrepair, the height of the grass was over 10-inches in length, the weeds were "noxious," or that the concrete structure was in disrepair.
 {¶ 71} The Supreme Court of Ohio has held that "the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." State v. Thompkins,78 Ohio St. 3d 380, 386, 1997-Ohio-52. We will first address appellant's claim that her conviction is not supported by sufficient evidence.
 {¶ 72} In reviewing the record for sufficiency, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact *Page 18 
could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. When deciding a sufficiency of the evidence issue, the reviewing court will not substitute its evaluation of witness credibility for that of the trier of fact. State v. Benge,75 Ohio St.3d 136, 142, 1996-Ohio-227. The state can use either direct or circumstantial evidence to prove the elements of a crime. State v.Nicely (1988), 39 Ohio St.3d 147, 151. Furthermore, "circumstantial evidence and direct evidence inherently possess the same probative value." Jenks, paragraph one of the syllabus.
 {¶ 73} A review of the evidence demonstrates that the state presented sufficient evidence to convict appellant of the four violations of the property maintenance code. At trial, the zoning official and building inspector testified regarding the disrepair of appellant's property. In addition, photographs were presented showing the overgrowth of grasses, the accumulation of several trailers, vehicles, parts, barrels, old machinery and tires, as well as deteriorating structures on the property.
 {¶ 74} When considering a manifest weight of the evidence challenge, an appellate court reviews the entire record, weighing the evidence and all reasonable inferences that can be drawn from it, and considers the credibility of witnesses, to determine whether in resolving conflicts in the evidence, "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172.
 {¶ 75} After a thorough review of the record, considering the evidence and reasonable inferences therefrom, we also conclude that the evidence supports the trial court's decision by the required degree of proof. Appellant's third assignment of error is overruled. *Page 19 
 {¶ 76} Assignment of Error No. 4:
 {¶ 77} "THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT."
 {¶ 78} Appellant argues in his fourth assignment of error that the trial court erred in sentencing. Appellant claims that the fine in this case exceeds the maximum fine for a minor misdemeanor conviction. Further, appellant argues that he cannot be sentenced for continuing violations based on the subjective approval of a government official.
 {¶ 79} The complaints in this case allege "that on or about Jan. 23, 2006 and continuing to this date, in the city of Carlisle, Warren County, Ohio, one Martz Concrete Co. did fail to maintain premises at 350 Central Ave. as follows:"
 {¶ 80} Judgment entry in this case states, "[i]t is the order of the Court that a fine in the amount of $50.00 per day shall be imposed, commencing May 31, 2006, for every day Defendant is in non-compliance of the provisions of the Carlisle Property Maintenance Code." The entry before this court only mentions Trial Case No. 06-02-CRB-0499(B), however, the trial court found appellant guilty of four counts in Case Nos. 06-02-CRB-0499(A), (B), (C), and (D).
 {¶ 81} R.C. 2929.31 authorizes an organization to be a fined up to $1,000 for a minor misdemeanor conviction. The property maintenance code authorizes fines of $50 to $250 for each violation. Further, the maintenance code defines each day as a separate offense.
 {¶ 82} A review of the judgment entry in this case reveals that the sentence is unclear and invalid. First, the judgment entry is ambiguous whether appellant was fined $50 per day for each of the four convictions or all convictions combined.
 {¶ 83} Second, the trial court erred in sentencing appellant to indefinite, continuing convictions and fines. Carlisle's complaints sought to hold appellant accountable for the nonconforming activity beginning on January 23, 2006 and continuing thereafter. Appellant was found guilty of four violations on April 26, 2006, with each day constituting a separate *Page 20 
offense.
 {¶ 84} Appellant was found guilty of violations from January 23 to April 26, yet the sentence in this case seeks to fine appellant beginning May 31, 2006, continuing indefinitely. The sentence imposed by the trial court is akin to a contempt finding, not a criminal conviction. Appellant may only be sentenced for violations for which it is convicted, not prospective convictions without a formal trial.
 {¶ 85} On remand, appellant may be fined for an amount within the monetary limits of the revised and maintenance codes for each individual violation and per day as a separate offense, as permitted under the law.
 {¶ 86} Additionally, appellant's argument regarding the continuing fines based on the subjective approval of a government official is moot.
 {¶ 87} Appellant's fourth assignment of error is sustained.
 {¶ 88} Appellant's conviction is affirmed, but the case is reversed as to sentencing only and remanded to the trial court for sentencing.
WALSH and POWELL, JJ., concur.
[1] Requiring that a copy of the code must be kept in the Clerk of Council's office.
[2] In City of Mayfield Heights v. Barry, the Eighth District held that a city's landscaping ordinance, providing that a property owner was required to maintain properly landscaping and to cut or destroy any noxious weeds or vines from growing beyond eight inches, was a strict liability offense, such that proof of criminal intent was not required, even though the ordinance did not include the prefix "no person shall." 2003-Ohio-4065 at ¶ 43.
[3] {¶ a} The preamble of the Property Maintenance Code states:
{¶ b} "An ordinance establishing the minimum regulations governing the conditions and maintenance of all property, buildings and structures; by providing the standards for supplied utilities and facilities and other physical things and conditions essential to insure that structures are safe, sanitary and fit for occupation and use; and the condemnation of buildings and structures unfit for human occupancy and use and the demolition of such structures; known as the Property Maintenance Code.
{¶ c} "WHEREAS: the Municipal Council wishes to adopt a property maintenance code that assures proper building practices and standards; and
{¶ d} "WHEREAS: the property maintenance code gives the zoning officer the ability to abate and prevent problems that negatively effect neighborhoods within the municipality and create a move livable community for the citizens."
[4] In Clipson, the Tenth District Court of Appeals held a municipal ordinance requiring sprinklers in all buildings with more than 7,500 square feet does not conflict with a state regulation requiring sprinklers in all buildings with more than 12,000 square feet since the rules and regulations of the building standards board are minimum standards, and municipal corporations are authorized to adopt their own ordinances. 69 Ohio App.3d at 752-753.
[5] {¶ a} In this case, appellant was charged with violating the following provisions of the maintenance code:
{¶ b} PM 304.1 General: "[t]he exterior of a structure shall be maintained in good repair, structurally sound and sanitary so as not to pose a threat to the public health, safety or welfare."
{¶ c} PM 303.1 Sanitation: "[a]ll exterior property shall be maintained in a clean, safe, and sanitary condition. The occupant shall keep that part of the exterior property which such occupant occupies or controls in a clean and sanitary condition."
{¶ d} PM 303.4 Weeds: "[a]ll premises and exterior property shall be maintained free from weeds or plant growth in excess of 10 inches (254mm). All noxious weeds shall be prohibited. Weeds shall be defined as all grasses, annual plants and vegetation, other than trees or shrubs provided; however this term shall not include cultivated flowers and gardens."
{¶ e} PM 303.8 Motor Vehicle: "[n]o motor vehicle shall be stored, kept, or parked outside on any property, unless there is displayed or mounted upon whatever license is required by Ohio law to permit that vehicle to be used on public streets. For the purpose of this section, the words "motor vehicle" shall have the same meaning as in the Uniform Traffic Laws of the State of Ohio. No such vehicle, while outside, shall be in a state of major disassembly, disrepair or in the process of being stripped or dismantled."
[6] Suspect classes include race, alienage and national origin.
[7] Quasi-suspect classes include gender and illegitimacy.
[8] Referred by the United States Supreme Court as "the extent to which the regulation has interfered with distinct investment-backed expectations" of the property owner. *Page 1